ARNOLD & PORTER LLP
Ronald C. Redcay (Cal. Bar No. 067236)
Matthew T. Heartney (Cal. Bar No. 123516)
Angel L. Tang (Cal. Bar No. 205396)
(*Admitted Pro Hac Vice*)
777 South Figueroa Street, 44th Floor
Los Angeles, California  90017-5844
Telephone:  (213) 243-4000
Facsimile:  (213) 243-4199
Ronald_Redcay@aporter.com
Matthew_Heartney@aporter.com
Angel_Tang@aporter.com

FELDMAN ORLANSKY & SANDERS
Jeffrey M. Feldman (Alaska Bar No. 7605029)
500 L Street, Suite 400
Anchorage, Alaska 99501
Telephone:  (907) 272-3538
Facsimile:  (907) 274-0819
feldman@frozenlaw.com

Bradley S. McKim (Alaska Bar No. 0511089)
BP Exploration (Alaska) Inc.
900 East Benson Boulevard
Anchorage, AK 99508
Telephone:  (907) 564-5154
Facsimile:  (907) 564-4031
mckimbs@bp.com

Attorneys for Defendant
BP Exploration (Alaska) Inc.

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| THE ALASKA GASLINE PORT AUTHORITY, | Case No. F05-0026 CIV (RRB) |
| Plaintiff, | REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS OF DEFENDANT BP EXPLORATION (ALASKA) INC. |
| v. | (Fed. R. Civ. P. 12(b)(6) & (7)) |
| EXXONMOBIL CORPORATION, a New Jersey corporation; EXXONMOBIL ALASKA PRODUCTION, INC., a Delaware corporation; BP P.L.C., a United Kingdom corporation; and BP EXPLORATION (ALASKA) INC., a Delaware corporation, | Judge:  The Honorable Ralph R. Beistline |
| Defendants. | |

# **TABLE OF CONTENTS**

Page

INTRODUCTION ................................................................................................. I

ARGUMENT .......................................................................................................3

I.     THE COMPLAINT FAILS TO STATE ANY ANTITRUST CLAIM (FIRST
       THROUGH FIFTH CLAIMS FOR RELIEF) ................................................3

       A.     Plaintiff Lacks Standing To Pursue Any Antitrust Claim ...................3

              1.     The preparedness inquiry is a question of law that is appropriate
                     for resolution on a motion to dismiss.........................................3

              2.     Plaintiff is not excused from having to plead facts sufficient to
                     demonstrate preparedness ...........................................................5

              3.     The Complaint fails to satisfy the Ninth Circuit's preparedness
                     requirements...............................................................................7

                     a.     Plaintiff has not consummated contracts or taken other
                            affirmative steps towards preparedness .........................8

                     b.     Plaintiff has not secured any financing.........................9

                     c.     Plaintiff lacks experience and expertise in the gas industry .......10

       B.     The Complaint Fails To State Any Antitrust Claim Based Upon Alleged
              Restraints Of, Or Lessening Of Competition In, Nonexistent Markets For
              The Transportation Or Purchase Of ANS Natural Gas.......................11

              1.     Like all antitrust claims, the First, Second and Third Claims
                     cannot exist without injury to competition in an existing market...........12

              2.     The Complaint's factual allegations establish that there are no
                     existing markets for transportation or purchase of ANS natural
                     gas ...........................................................................................14

       C.     The Complaint Fails To State Any Antitrust Claim Based Upon Alleged
              Restraints Of, Or Lessening Of Competition In, The Existing Markets
              For The Sale Of Natural Gas ...............................................................17

       D.     The Complaint States No Antitrust Claim Based On BP's Mergers (Fifth
              Claim for Relief) ................................................................................17

              1.     The Complaint fails adequately to allege that the mergers were
                     illegal........................................................................................18

2.    The Complaint fails adequately to allege plaintiff's antitrust injury ...................................................................................19

3.    Any claim based on the mergers is time barred .....................................20

II.    PLAINTIFF LACKS STANDING TO BRING THE UTPA CLAIM (SIXTH CLAIM FOR RELIEF) .............................................................................20

III.   THE COMPLAINT STATES NO CLAIM FOR TORTIOUS INTERFERENCE BECAUSE THE ALLEGED WRONGFUL CONDUCT IS PRIVILEGED (SEVENTH CLAIM FOR RELIEF) .............................................................20

IV.    THE COMPLAINT STATES NO CLAIM FOR BREACH OF CONTRACT AGAINST BPXA (EIGHTH CLAIM FOR RELIEF)......................................22

A.    The Charter's Express Terms Permit Only The State Of Alaska To Enforce Its Provisions For Good Faith Negotiations With Third Parties ...........22

B.    The Charter Permits Its North Slope Gas Provisions To Be Enforced Only Through Arbitration .....................................................................23

C.    Plaintiff Has Not Alleged Conduct That Occurred Before The Pertinent Charter Provisions Expired .....................................................................23

V.     PLAINTIFF'S INJUNCTIVE RELIEF CLAIMS SHOULD BE DISMISSED FOR FAILURE TO JOIN PARTIES WHOSE PRESENCE IS REQUIRED BY RULE 19 .......................................................................................................24

CONCLUSION..............................................................................................................25

BPXA's Reply Memo. in Support of Motion to Dismiss
*Alaska Gasline Port Authority v. ExxonMobil, et al.*, Case No. F05-0026 CIV (RRB)

ii

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Adaptive Power Solutions, LLC v. Hughes Missile Sys. Co.*,
    141 F.3d 947 (9th Cir. 1998) ......................................................................... 13

*Ahtna, Inc. v. Ebasco Constructors, Inc.*,
    894 P.2d 657 (Alaska 1995).......................................................................... 23

*In re Airport Car Rental Antitrust Litig.*,
    474 F. Supp. 1072 (N.D. Cal. 1979) ............................................................. 7

*American Ad Mgmt., Inc. v. Gen. Tel. Co. of Cal.*,
    190 F.3d 1051 (9th Cir. 1999) ...................................................................... 4

*Ascon Properties, Inc. v. Mobil Oil Co.*,
    866 F.2d 1149 (9th Cir. 1988) ................................................................. 2, 24

*Ashley Creek Phosphate Co. v. Chevron USA, Inc.*,
    315 F.3d 1245 (10th Cir. 2003) .................................................................... 6

*Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*,
    459 U.S. 519 (1983)................................................................................... 1, 4

*Bendix Corp. v. Adams*,
    610 P.2d 24 (Alaska 1980)........................................................................... 21

*Big Bear Lodging Ass'n v. Snow Summit, Inc.*,
    182 F.3d 1096 (9th Cir. 1999) ...................................................................... 18

*Brownlee v. Applied Biosystems Inc.*,
    1989 WL 53864 (N.D., Cal. Jan 9, 1989) .............................................. 15, 16

*Brunson Commc'ns Inc. v. Arbitron, Inc.*,
    239 F. Supp. 2d 550 (E.D. Pa. 2002) .......................................................... 2

*Bubar v. Ampco Foods, Inc.*,
    752 F.2d 445 (9th Cir. 1985) ........................................................... 4, 5, 6, 7

*Cargill, Inc. v. Monfort of Colorado, Inc.*,
    479 U.S. 104 (1986) .................................................................................... 19

*Consol. Edison, Inc. v. Northeast Utils.*,
    426 F.3d 524 (2d Cir. 2005)......................................................................... 22

*Consol. Gas Co. of Florida, Inc. v. City Gas Co. of Florida*,
    880 F. 2d 297 (11th Cir. 1989) .................................................................... 16

*Destec Energy, Inc. v. S. Cal. Gas Co.*,
    5 F. Supp. 2d 433 (S.D. Tex 1998) .............................................................. 15

BPXA's Reply Memo. in Support of Motion to Dismiss
*Alaska Gasline Port Authority v. ExxonMobil, et al.*, Case No. F05-0026 CIV (RRB)

iii

*Eagle v. Star-Kist Foods, Inc.*,
   812 F.2d 538 (9th Cir. 1987) ........................................................................ 4

*FTC v. Procter & Gamble Co.*,
   386 U.S. 568 (1967) .................................................................................. 18

*Fine v. Barry & Enright Productions*,
   731 F.2d 1394 (9th Cir. 1984) .................................................................... 7

*Fleer Corp. v. Topps Chewing Gum, Inc.*,
   415 F. Supp. 176 (E.D. Pa. 1976) ............................................................... 7

*Florida Seed Co., Inc. v. Monsanto Co.*,
   915 F. Supp. 1167 (M.D. Ala. 1995) ........................................................... 4

*Fraser v. Major League Soccer, L.L.C.*,
   284 F.3d 47 (1st Cir. 2002) ....................................................................... 11

*Gas Utils. Co. of Ala.*,
   996 F.2d 282 (11th Cir. 1993) .................................................................... 9

*Gas Utils. Co. of Ala., Inc. v. S. Natural Gas Co.*,
   825 F. Supp 1551 (N.D. Ala. 1992) ............................................................ 6

*Glenn Holly Entm't Inc., v. Tektronix Inc.*,
   352 F.3d 367 (9th Cir. 2003)P ................................................................... 4

*Go-Video, Inc. v. Matsushita Elec. Indus. Co., Ltd.*
   *(In re Dual-Deck Video Cassette Recorder Antitrust Litig.)*,
   11 F.3d 1460 (9th Cir. 1993) .................................................................. 3, 7

*Hayes v. Solomon*,
   597 F.2d 958 (5th Cir. 1979) ...................................................................... 9

*Indium Corp. of Am. v. Semi-Alloys, Inc.*,
   566 F. Supp. 1344 (1983) ........................................................................... 4

*Jayco Sys., Inc. v. Savin Bus. Machines Corp.*,
   777 F.2d 306 (5th Cir. 1985) ................................................................... 6, 9

*Kingray, Inc. v. NBA, Inc.*,
   188 F. Supp. 2d 1177 (S.D. Cal. 2002) ....................................................... 2

*Knevelbaard Dairies v. Kraft Foods, Inc.*,
   232 F.3d 979 (9th Cir. 2000) ...................................................................... 1

*Les Shockley Racing Inc. v. Nat'l Hot Rod Ass'n*,
   884 F.2d 504 (9th Cir. 1989) ...................................................................... 1

*McGlinchy v Shell Chem. Co.*,
   845 F.2d 802 (9th Cir. 1988) ...................................................................... 2

*NCAA v. Bd. of Regents*,
   468 U.S. 85 (1984) [cited at Opp. 30]...........................................................................12

*Napster, Inc. Copyright Litig., v. Hummer Winblad Venture Partners*,
   354 F. Supp. 2d 1113 (2005) ........................................................................................4

*Northwest Wholesale Stationers, Inc. v. Pacific Stationary & Printing Co.*,
   472 U.S. 284 (1985)......................................................................................................13

*Ostrofe v. H.S. Crocker Co., Inc.*,
   740 F.2d 739 (9th Cir. 1984) .........................................................................................7

*Paladin Assocs, Inc. v. Montana Power Co.*,
   328 F. 3d 1145 (9th Cir. 2003) ...................................................................................15

*Phillips v. Washington Legal Found.*,
   524 U.S. 156 (1998)......................................................................................................21

*Ran Corp. v. Hudesman*,
   823 P.2d 646 (Alaska 1991)....................................................................................20, 21

*Rebel Oil Co. v. Atl. Richfield Co.*,
   51 F. 3d 1421 (9th Cir. 1995) .....................................................................................15

*Rutman Wine Co. v. E. & J. Gallo Winery*,
   829 F.2d 729 (9th Cir. 1987) ..................................................................................14, 18

*Smilecare Dental Group v. Delta Dental Plan of Cal. Inc.*,
   88 F.3d 780 (9th Cir. 1996) .....................................................................................12, 14

*Solinger v. A&M Records, Inc.*,
   586 F.2d 1304 (9th Cir. 1978) .......................................................................................4

*Tanaka v. Univ. of S. Cal.*,
   252 F. 3d 1059 (9th Cir. 2001) ...................................................................................17

*Thompson v. Metro. Multi-List, Inc.*,
   934 F.2d 1566 (11th Cir. 1991) .....................................................................................7

*United States v. Enova Corp.*,
   107 F. Supp. 2d 10 (D. D.C. 2000)...............................................................................15

*United States v. Oracle Corp.*,
   331 F. Supp. 2d 1098 (N.D. Cal. 2004) ..................................................................18, 19

## STATUTES

15 U.S.C. § 18 .............................................................................................................18, 19

15 U.S.C. § 720n..............................................................................................................10

Fed. R. Civ. P. 12(b)(6) .............................................................................................3, 4, 5, 24

**OTHER AUTHORITIES**

Clayton Act § 7 ................................................................................................................. 18, 19, 20

RESTATEMENT (SECOND) OF CONTRACTS § 302(1) (1981) .......................................................... 22

RESTATEMENT (SECOND) OF CONTRACTS § 309 & cmt. b (1981) ................................................ 23

<u>INTRODUCTION</u>

Plaintiff's Consolidated Opposition ("Opp."), like its Complaint, relies on length and complexity to obscure the few facts determinative of defendants' motions to dismiss.  It is clear, however, that plaintiff's case is based upon defendants' non-commitments of ANS gas to plaintiff.  In order to turn those non-commitments into a federal antitrust case plaintiff alleges that they resulted from collusion by defendants.  While that allegation is not true, BPXA's motion does not challenge plaintiff's allegations of collusion, but instead focuses on several indisputable antitrust principles, including the standing limitations on who may bring an antitrust claim, that require dismissal of plaintiff's claims.

Plaintiff contends that BPXA's motion is based upon "two basic errors."  First, plaintiff contends that BPXA asks the Court "to ignore *facts* alleged and to find *facts* not alleged."  Second, plaintiff contends that BPXA's arguments "would simply place Defendants' conduct -- no matter how collusive and anticompetitive -- beyond the reach of antitrust law."  [Opp. 1]  Neither of plaintiff's contentions is correct.  Certainly neither reflects an "error" in BPXA's motion.

BPXA does not ask the Court to ignore any *facts* alleged in the Complaint.  BPXA simply asks the Court to ignore the many sweeping unsupported conclusions alleged in the Complaint, and repeated in the Opposition.  Rule 8 requires no less in this context.

The Supreme Court has made clear that in an antitrust case the "district court must retain the power to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed."  *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 528 n.17 (1983).  Thus, a plaintiff must set forth *specific facts* sufficient to outline each essential element of its claims.  *Knevelbaard Dairies v. Kraft Foods, Inc.*, 232 F.3d 979, 984 (9th Cir. 2000) (An antitrust plaintiff must "allege sufficient facts from which the court can discern the elements of an injury resulting from an act forbidden by the antitrust laws."); *Les Shockley Racing Inc. v. Nat'l Hot Rod Ass'n*, 884 F.2d 504, 508 (9th Cir. 1989) (An antitrust plaintiff must "sketch the outline of the antitrust violation with allegations of supporting factual detail.").  It is not proper for the Court to "assume that the [plaintiff] can prove facts that it has not alleged . . . ."  *Associated Gen. Contractors*, 459 U.S. at 526.  A complaint that states only

speculative or conclusory allegations should be dismissed. *Ascon Properties, Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1155-56 (9th Cir. 1988) ("We have [] recognized that 'conclusory allegations without more are insufficient to defeat a motion to dismiss for failure to state a claim.'") (quoting *McGlinchy v Shell Chem. Co.*, 845 F.2d 802, 810 (9th Cir. 1988)).

The Complaint here is rife with unsubstantiated conclusions and speculative assertions, the most obvious and important of which is plaintiff's claim that "the *only* impediment to the Authority's plan is Defendants' concerted refusal to supply natural gas." Cmpl. ¶ 100 (emphasis added); *see also id*. ¶¶ 15 & 18.  That claim -- which forms the basis of plaintiff's arguments on standing and competitive effect -- however, is nothing more than a mere *conclusion*.  It is not based on or supported by any fact set forth in the Complaint and, therefore, should "not be taken as true merely because [it is] cast in the form of [a] factual allegation[] . . . ." *Kingray, Inc. v. NBA, Inc.*, 188 F. Supp. 2d 1177, 1186 (S.D. Cal. 2002).  Indeed, the allegations in the Complaint demonstrate just the opposite -- that plaintiff has failed to take even the most preliminary steps towards achieving preparedness.

Plaintiff's second argument -- that dismissing its lawsuit would allow defendants to escape the reach of the antitrust laws -- is also wrong.  If defendants have violated the antitrust laws, as well as the various state laws and contractual provisions listed in the Complaint, the State of Alaska or the United States Department of Justice can hold them accountable.  The doctrine of standing is intended to enhance enforcement by ensuring that antitrust enforcement is vested only in those parties who can effectively enforce the laws and who will bring cases because of their merits, not to pursue the plaintiff's own agenda, which as here may be in conflict with the public interest and the policies underlying the antitrust laws.

Plaintiff's efforts at complication and obfuscation cannot hide that it has failed to allege *facts* in its Complaint that state an antitrust claim.  Allowing plaintiff to proceed with this lawsuit on the mere basis of conclusory and speculative allegations would "simply not [be] fair to the defendants" and "would be an onerous imposition on the judicial process . . . ." *Brunson Commc'ns Inc. v. Arbitron, Inc.*, 239 F. Supp. 2d 550, 567-68 (E.D. Pa. 2002).  This Court therefore should dismiss plaintiff's Complaint.

BPXA's Reply Memo. in Support of Motion to Dismiss
*Alaska Gasline Port Authority v. ExxonMobil, et al.*, Case No. F05-0026 CIV (RRB)

2

<u>ARGUMENT</u>

I.    THE COMPLAINT FAILS TO STATE ANY ANTITRUST CLAIM (FIRST THROUGH FIFTH CLAIMS FOR RELIEF)

    A.    <u>Plaintiff Lacks Standing To Pursue Any Antitrust Claim</u>

Plaintiff lacks standing to bring its antitrust claims because the Complaint does not, and cannot, allege facts sufficient to show its "preparedness" to enter the business it claims was injured by defendants' asserted antitrust violations.  Specifically, the Complaint's factual allegations fail to satisfy any of the four factors that the Ninth Circuit looks to in evaluating preparedness.  [BPXA Mem. 7-17]  While the Opposition [at 15] initially concedes that these four factors are the "legal standard" for determining standing, plaintiff's first two arguments seek to convince the Court that it need not evaluate the Complaint's factual allegations against these four factors.  Plaintiff argues that: (1) the issue of antitrust standing is one of fact, not law, and is therefore inappropriate for consideration on a motion to dismiss under Rule 12(b)(6); and (2) its failure to allege facts showing its preparedness should be excused by a purported "futility" exception.  Only then does plaintiff alternatively argue that the Complaint satisfies the Ninth Circuit's four-factor test.

Plaintiff's arguments ignore controlling case law.  First, it is indisputable that the question of antitrust standing in the Ninth Circuit is a question of *law* appropriate for consideration on a Rule 12(b)(6) motion.  Second, plaintiff's purported futility exception does not exist.  The Ninth Circuit has expressly held that an antitrust plaintiff cannot evade its obligation to allege and prove preparedness by arguing that it was prevented from doing so by defendants' alleged wrongdoings.  Any prospective entrant to the market must satisfy the preparedness requirements enunciated in *Go-Video, Inc. v. Matsushita Elec. Indus. Co., Ltd. (In re Dual-Deck Video Cassette Recorder Antitrust Litig.)*, 11 F.3d 1460, 1464-65 (9th Cir. 1993), which demand that plaintiff demonstrate "substantial demonstrable steps" towards achieving preparedness, including "consummated" contracts and "secured" financing.  The facts alleged in the Complaint, as confirmed by the discussion in the Opposition, show that plaintiff lacks even the most basic requisite essentials.

    1.    The preparedness inquiry is a question of law that is appropriate for <u>resolution on a motion to dismiss</u>

The Ninth Circuit has made clear that the question of antitrust standing, including the

BPXA's Reply Memo. in Support of Motion to Dismiss
*Alaska Gasline Port Authority v. ExxonMobil, et al.*, Case No. F05-0026 CIV (RRB)

3

question of whether a prospective entrant is sufficiently prepared to enter a market, is one of law:

> It is apparent that determination of standing is a *question of law* . . . . This is to be distinguished from the questions of fact that a plaintiff would ultimately have to prove in order to establish his case . . . . The *legal question* at the outset is whether the plaintiff even though he can show some injury caused in fact by an antitrust violation, has standing to bring a [antitrust claim].

*Bubar v. Ampco Foods, Inc.,* 752 F.2d 445, 449 (9th Cir. 1985) (emphasis added).[1]  Plaintiff ignores this line of controlling Ninth Circuit authority, and instead argues that *Solinger v. A&M Records, Inc.*, 586 F.2d 1304 (9th Cir. 1978), stands for the proposition that the preparedness inquiry seldom presents an issue of law.  [Opp. 15-16]  *Solinger* is not only dated in light of these subsequent Ninth Circuit opinions, but it also did not decide the issue of preparedness adverse to defendant, but only remanded it to the district court.  Moreover, *Solinger* noted that a plaintiff's antitrust "claim may be dismissed for lack of standing as a matter of law."  686 F.2d at 1309.

That the question of standing is appropriate for determination on a Rule 12(b)(6) motion is also well settled.  Indeed, the Supreme Court has stated that standing is precisely the type of issue that should be decided at the outset of a case before the parties are forced to expend unnecessary time, energy and effort on a "potentially massive factual controversy."  *Associated Gen. Contractors*, 459 U.S. at 528 n.17.  Courts regularly grant Rule 12(b)(6) motions on the ground that the plaintiff lacks antitrust standing.[2]  Plaintiff attempts to discount the Rule 12(b)(6) cases cited by BPXA by claiming they are factually distinct.  But, that argument supports BPXA's position that the facts alleged in the Complaint are determinative of the issue.  If the Court finds

---

[1]  *See also Glenn Holly Entm't Inc., v. Tektronix Inc.*, 352 F.3d 367, 368 (9th Cir. 2003) ("Antitrust standing is a question of law . . . .") (quoting *American Ad Mgmt., Inc. v. Gen. Tel. Co. of Cal.*, 190 F.3d 1051, 1054 (9th Cir. 1999); *Eagle v. Star-Kist Foods, Inc.*, 812 F.2d 538, 539 (9th Cir. 1987) ("The issue of status as a proper party in an antitrust suit is a pure question of law . . . ."); *Napster, Inc. Copyright Litig., v. Hummer Winblad Venture Partners*, 354 F. Supp. 2d 1113, 1118 (2005) ("The Ninth Circuit has held that this determination [of standing] is a 'question of law'" . . . .) (quoting *Bubar*, 752 F.2d at 449).

[2]  *See, e.g., id.* at 521 (reinstating district court's dismissal under Rule 12(b)(6) for lack of antitrust standing); *Eagle*, 812 F.2d at 543 (affirming dismissal under Rule 12(b)(6) for lack of antitrust standing); *Napster, Inc.,* 354 F. Supp. 2d at 1124 (granting dismissal of claim under Rule 12(b)(6) on the grounds plaintiff lacked preparedness); *Florida Seed Co., Inc. v. Monsanto Co*., 915 F. Supp. 1167, 1177 (M.D. Ala. 1995) (same); *Indium Corp. of Am. v. Semi-Alloys, Inc.*, 566 F. Supp. 1344, 1354 (1983) (granting dismissal under Rule 12(b)(6) for lack of antitrust standing).

BPXA's Reply Memo. in Support of Motion to Dismiss
*Alaska Gasline Port Authority v. ExxonMobil, et al.*, Case No. F05-0026 CIV (RRB)

4

that plaintiff has failed to allege facts sufficient to establish standing, it may dismiss the Complaint under Rule 12(b)(6).

     2.     Plaintiff is not excused from having to plead facts sufficient to demonstrate preparedness

Plaintiff next argues that the preparedness test does not apply where "further efforts to enter the market would have been futile because of the defendants' behavior." [Opp. 17-18]  To the contrary, however, controlling Ninth Circuit authority, not addressed in the Opposition, expressly holds that an antitrust plaintiff cannot escape its duty to demonstrate preparedness by arguing it was prevented from doing so by defendants' alleged antitrust violations.  Moreover, even if plaintiff could argue it was prevented from engaging in some preparatory steps by defendants' refusal to sell it gas, it cannot reasonably argue that *every* missed step was due to defendants' alleged conspiracy.  Plaintiff's argument, when taken to its logical conclusion, would have the Court confer antitrust standing upon any hopeful entrant, no matter how speculative its claims, so long as it alleges that it was prevented from becoming prepared by defendants' conspiratorial conduct.  Such reasoning would render the preparedness requirement a nullity.

The Ninth Circuit in *Bubar*, 752 F.2d at 452, squarely addressed the question of whether a prospective entrant can use "futility" to avoid the need to demonstrate preparedness.  In *Bubar*, the Ninth Circuit affirmed the district court's finding that plaintiffs lacked preparedness to enter the food processing market because they failed to obtain financing commitments or a binding contract to acquire assets.  The court denied standing despite the fact plaintiffs had engaged in 1) multiple discussions with banks and venture capital groups regarding the structure and details of the potential financing arrangement, and 2) ongoing negotiations with the defendants regarding the purchase of the assets.  Plaintiffs argued that they should not be required to obtain a binding contract because they were precluded from doing so by the conspiratorial conduct of the defendants.  In rejecting plaintiffs' futility argument, the Ninth Circuit, 752 F.2d at 452, stated:

> The [plaintiff group] asserts that [its inability to obtain a binding contract to acquire assets necessary to compete] should not be a factor because the contract that was necessary was to be made with one of the alleged antitrust conspirators.  Yet on the other hand, when our inquiry at this stage in the proceeding is one of standing, and one element is to determine how close the [plaintiff] group was

BPXA's Reply Memo. in Support of Motion to Dismiss
*Alaska Gasline Port Authority v. ExxonMobil, et al.*, Case No. F05-0026 CIV (RRB)

5

to becoming a competitor, the lack of a contract to obtain the assets
necessary to compete is surely a relevant factor . . . . If the assets
were to be acquired from [a] third party, there is no doubt that this
would be a highly relevant factor and, for the purposes of the
standing inquiry, we find it relevant here.

Plaintiff's Opposition simply ignores this controlling case law.  Plaintiff also misstates district court decisions rejecting the futility doctrine.  For example, plaintiff claims that the Tenth Circuit in *Ashley Creek* "noted" that "in order to show preparation to enter a given market, an antitrust plaintiff need not take those steps which would have been rendered futile by an alleged monopolist."  [Opp. 18-19 n.3]  The quoted language, however, reflects the position that plaintiff Ashley Creek put forth.  The court *rejected* that position.  *Ashley Creek Phosphate Co. v. Chevron USA, Inc.*, 315 F.3d 1245, 1258 (10th Cir. 2003).  The court's actual holding is just the opposite: "[t]his court agrees with the district court that [plaintiff's] lack of preparation is *not excused by a futility exception* to the preparation requirement."  *Id.* (emphasis added).  In refusing to apply the futility doctrine, the *Ashley Creek* court found plaintiff's argument "boils down to an assertion that a proposed market participant need take no further preparatory steps, even of the most basic and preliminary nature, after an asserted violation of the antitrust laws by the party in control of an essential facility."  *Id.* at 1258-59.  Plaintiff's argument here is no different and would likewise, "eviscerate the standing requirement, rendering it wholly dependent on the merits of the plaintiff's case."  *Id.*

Plaintiff similarly misstates the other cases cited by BPXA.  [*See* BPXA Mem. 9]  In both *Jayco* and *Gas Utilities*, like in *Bubar* and *Ashley Creek*, the court refused to apply the futility exception, (and further found lack of standing upon application of the four-factor preparedness test).  *Jayco Sys., Inc. v. Savin Bus. Machines Corp.*, 777 F.2d 306, 314 (5th Cir. 1985) ("the fact that [plaintiff] could not have acquired the machines from [defendant] [due to its refusal to sell] even had it satisfied all of the above [preparedness] elements is not dispositive.  Rather, the question is whether assuming [defendant] had been willing to supply [plaintiff] with the necessary machines, [plaintiff] would have been prepared to bid them.");  *Gas Utils. Co. of Ala., Inc. v. S. Natural Gas Co.*, 825 F. Supp 1551, 1573 (N.D. Ala. 1992) ("plaintiff cannot simply use [defendant's denial of access to a pipeline] to create an inference of antitrust injury").  Thus, rather

BPXA's Reply Memo. in Support of Motion to Dismiss
*Alaska Gasline Port Authority v. ExxonMobil, et al.*, Case No. F05-0026 CIV (RRB)

6

than "approving" the futility doctrine, as plaintiff would have this Court believe, the courts declined to apply the futility doctrine, and instead, applied the four-factor preparedness test to determine whether the plaintiffs were sufficiently prepared to engage in its intended business. This Court likewise should reject plaintiff's attempt to confuse the issues and divert the Court's focus from the true standing issue -- whether the alleged facts, when examined in their totality, show that plaintiff is prepared to commence its proposed pipeline project.[3]

> 3.    The Complaint fails to satisfy the Ninth Circuit's preparedness requirements

Plaintiff fails even to address the leading Ninth Circuit cases on preparedness -- *Go-Video* and *Bubar*.[4]  The reason for this purposeful omission is clear -- under this controlling Ninth Circuit authority, plaintiff is required to allege facts clearly showing its preparedness, including that it has secured financing, consummated necessary contracts, developed experience and expertise in the industry, and taken other affirmative steps towards preparing for the business.  *Go-Video*, 11 F.3d at 1465; *Bubar*, 752 F.2d at 451-52.  Because plaintiff cannot satisfy any of the stringent preparedness requirements enunciated in *Go-Video* and *Bubar*, it simply does not discuss those cases.  Instead, plaintiff engages in rhetoric and hyperbole, misstates allegations of the Complaint, and proffers arguments that are without basis and which have no bearing on the preparedness inquiry, such as the following:  plaintiff "has been singularly devoted to the construction of a

---

[3]  Plaintiff cites four cases to support its claim that this Court should apply the futility doctrine. But, the cases do not stand for the proposition for which they are offered.  Rather, two of the cases confirm that courts throughout the country apply the four-factor standing test and require plaintiffs to present adequate evidence of concrete preparedness.  *Thompson v. Metro. Multi-List, Inc.*, 934 F.2d 1566, 1572 (11th Cir. 1991) (applying preparedness test and finding standing when plaintiff was already an established competitor in the market served by the defendant and made "a reasonable attempt to enter the market"); *Fleer Corp. v. Topps Chewing Gum, Inc.*, 415 F. Supp. 176, 179-80 (E.D. Pa. 1976) (applying preparedness test and finding standing when plaintiff adequately demonstrated background and experience in the market and financial capability to compete).  The other two cases plaintiff cites in its futility discussion are entirely inapplicable here.  *Ostrofe v. H.S. Crocker Co., Inc.*, 740 F.2d 739, 743 (9th Cir. 1984) (discussing the futility of a demand for employment in a boycott action); *In re Airport Car Rental Antitrust Litig.*, 474 F. Supp. 1072, 1102 (N.D. Cal. 1979) (considering futility argument in determining proximate cause, not standing to sue).

[4]  Plaintiff instead cites the older, and completely distinguishable *Fine v. Barry & Enright Productions*, 731 F.2d 1394 (9th Cir. 1984).  In that case, plaintiff already was a participant in the market (competing on game shows).  He challenged as an antitrust violation a rule that prevented him from further participating.

BPXA's Reply Memo. in Support of Motion to Dismiss
*Alaska Gasline Port Authority v. ExxonMobil, et al.*, Case No. F05-0026 CIV (RRB)

7

pipeline to transport North Slope gas. This fact alone weighs heavily in favor of finding standing . . . ." [Opp. 19] There is no question the Ninth Circuit requires more than a "devotion" to a project to find standing; it requires that plaintiff show that it took "substantial demonstrable steps" towards achieving preparedness. As demonstrated below, and in BPXA's Memorandum, plaintiff has failed to take such steps.

a.   <u>Plaintiff has not consummated contracts or taken other affirmative steps towards preparedness</u>

Plaintiff chooses the descriptive terms it uses in the Opposition very carefully. It is not without reason that plaintiff avoids claiming that it has entered into any *binding* contracts that are necessary to preparedness. With respect to obtaining necessary contracts, plaintiff states only that it has conducted the following: 1) "engaged the Bechtel Corporation for technical and development support;" 2) "drawn on the significant background and experience of the Yukon Pacific Corporation;" 3) "worked with Sempra Energy;" and 4) "received Memoranda of Understanding" from four LNG receiving terminals and a shipping company. [Opp. 20-21].[5] Plaintiff does not allege that it has entered into a single binding contract.[6] This implied admission itself is sufficient to show that plaintiff lacks the necessary preparatory essentials to embark upon its intended

---

[5] Even these tenuous relationships, as described, are greatly exaggerated when compared to the facts alleged in the Complaint. Contrary to plaintiff's claim that it has "drawn on" the background and experience of Yukon Pacific, its Complaint alleges only that it has obtained an "option to purchase" Yukon Pacific's portfolio of permits and data. [Cmpl. ¶ 90] No purchase transaction has been alleged. Further, plaintiff does not allege that it "engaged" Bechtel for "technical and development support." Rather, the only role Bechtel is alleged to have played in plaintiff's proposed project is to provide a project cost estimate. [*Id.* ¶ 91] Finally, it is worth noting that although plaintiff has alleged the "receipt" of various Memoranda of Understanding (MOUs), such memoranda, by definition, are preliminary in nature and are not legally binding contracts.

[6] Although plaintiff refers to a "contract" with Sempra Energy to "assist in the development of the initial phases of the pipeline project [and] to fund or finance a portion of the project," [Opp. 21] this contract expired when Sempra's withdrew from the project [Cmpl. ¶ 104]. Plaintiff also refers to two other purported "contracts," but exaggerates the nature of those relationships, which were not contractual at all. The Opposition claims plaintiff entered a "contract" with Sempra "to buy and market" gas. [Opp. 21, citing Cmpl. ¶ 220] But, the Complaint alleges only that plaintiff has "*negotiated* for Sempra to buy and market all of the gas." [Cmpl. ¶ 220] Similarly, plaintiff argues that it has "acquired 'significant senior permits, engineering studies . . . and plans necessary to build' the pipeline." [Opp. 20, citing Cmpl. ¶¶ 18, 73 & 90] The Complaint, however, alleges only that plaintiff has the "exclusive option to purchase YPC and its portfolio of senior permits . . . [and] data . . . ." [Cmpl. ¶ 90] These are just some examples of the numerous misrepresentations of the Complaint found in plaintiff's Opposition.

business.

Furthermore, although previously discussed in detail in BXPA's Memorandum (but addressed only in a cursory footnote by plaintiff), it bears repeating that plaintiff lacks both approval from and a critical contract with the State of Alaska.  [*See* BPXA Mem. 11-12]  That contract is vital to the success of any pipeline project, including plaintiff's proposed project.[7]

b.    Plaintiff has not secured any financing

The Opposition also concedes that plaintiff has not yet secured a single source of financing. Plaintiff states only that it "has the *ability* to obtain financing" and that "obtaining financing is . . . *highly likely*," but it does not, and cannot, claim that it has *secured* necessary funds.  [Opp. 22-23] Plaintiff's concession is significant.  The law requires that plaintiff *secure* the financing for its project, not just have possible financing available to it at some time in the future.  *See*, *e.g.*,  *Jayco Sys., Inc*., 777 F.2d at 315, quoting *Hayes v. Solomon*, 597 F.2d 958, 975 (5th Cir. 1979) ("mere possibility of financing being available in the abstract is not enough"); *Gas Utils. Co. of Ala*., 996 F.2d 282, 283 (11th Cir. 1993) (holding gas distributor was not prepared to enter new geographic market because it had not yet "*secure[d]* financing") (emphasis in original).

Plaintiff's concession is also inconsistent with the factual premise upon which it bases its entire case -- that, but for defendants' withholding of gas, it is ready and able to implement its proposed pipeline project.  Plaintiff is a long way from raising the necessary funds for its proposed 25 billion dollar project.  Plaintiff does not allege that it has applied for the federal loan guarantees under the Alaska Natural Gas Pipeline Act, 15 U.S.C. § 720n [Cmpl. ¶ 97], entered into a fiscal contract with the State of Alaska [*Id.* ¶ 96], or secured any form of private funding.  The only piece of the funding puzzle plaintiff has secured to support what will be the largest infrastructure project in North American history is an IRS private letter ruling exempting the project from federal taxes. [*Id.* ¶ 89]  It goes without saying that plaintiff cannot fund a 25 billion dollar project on a mere private letter ruling.

---

[7]  As ExxonMobil points out in its motion, plaintiff's lawsuit is unauthorized under state law because it is preempted by the Stranded Gas Development Act and other state statutes governing natural resource development and management.  [*See* XOM Mem. 42-49]

BPXA's Reply Memo. in Support of Motion to Dismiss
*Alaska Gasline Port Authority v. ExxonMobil, et al.*, Case No. F05-0026 CIV (RRB)

9

c.    Plaintiff lacks experience and expertise in the gas industry

Plaintiff does not dispute that it, acting alone, has no experience or expertise in the gas business. Plaintiff argues instead that it has "developed relationships and agreements in all [relevant] areas with the leading firms in their respective fields." [Opp. 20] But, as shown above, the facts alleged in the Complaint directly contradict plaintiff's claim. The Complaint reveals that plaintiff has no real "agreement" with any of the firms it lists -- Bechtel, Yukon Pacific Corporation or Sempra Energy. Rather, plaintiff has alleged only a cost estimate from Bechtel and an option to purchase information from Yukon Pacific, and it has not alleged any existing contract with Sempra. [*Id.* ¶¶ 90-91 & 104] Plaintiff's conclusory allegation of a consortium of relationships with "major private corporations" fails because it is without any factual basis.

In short, plaintiff has failed to demonstrate any of the *Go-Video* preparedness requirements and its Opposition, if anything, confirms the lack of such preliminary essentials.[8]

---

[8] This would be so even if plaintiff could rely on a "futility" exception. Such an exception certainly would not excuse plaintiff from its failure to perform preliminary matters unrelated to the actions of defendants. For example, the following significant preparatory steps plaintiff has not taken, among others, are not dependent on any refusal by defendants to sell plaintiff ANS gas:

- Purchasing gas from the other owners of North Slope gas, including ConocoPhillips and the State of Alaska.

- Submitting an application for federal funding under the Alaska Natural Gas Pipeline Act, 15 U.S.C. § 720n. (Plaintiff claims only that funding is "available" under this act. Cmpl. ¶ 81.)

- Negotiating a fiscal contract with the State of Alaska. (Plaintiff claims only that it has submitted an "application" with the State of Alaska for a fiscal contract. *Id.* ¶ 96.)

- Purchasing the portfolio of permits, plans and data held by the Yukon Pacific Corporation. (Plaintiff claims only that it has the "exclusive option to purchase" the portfolio of information. *Id.* ¶ 90.)

- Applying for renewal of expired governmental and municipal permits and for permits never before obtained. (Plaintiff admits these permits were acquired in the 1980s. *Id.* ¶¶ 73 & 90.)

- Conducting further negotiations and entering into binding contracts with the receiving terminals and shipping company that purportedly submitted Memoranda of Understanding ("MOUs") to plaintiff. (Plaintiff claims only that it has "received" such MOUs. *Id.* ¶ 85.)

B.    The Complaint Fails To State Any Antitrust Claim Based Upon Alleged
      Restraints Of, Or Lessening Of Competition In, Nonexistent Markets For
      The Transportation Or Purchase Of ANS Natural Gas

The most basic requirement of any antitrust claim is injury to competition in an existing market established by actual purchase and sale transactions. *See Fraser v. Major League Soccer, L.L.C.*, 284 F.3d 47, 69 (1st Cir. 2002) ("[w]here there is no existing market, there can be no reduction in the level of competition"), and other opinions cited at BPXA Mem. 18-19.  All five of plaintiff's antitrust claims seek to satisfy this requirement with reference to alleged injury to competition in two purported "relevant markets" that are limited to ANS natural gas -- one involving the "transportation of," and another "the purchase of," ANS gas.[9]

Plaintiff's Opposition confirms the alleged facts [Cmpl. ¶¶ 15, 156, 159; *see* BPXA Mem. 20-21] that establish that these ANS gas markets do not exist, namely, that there are no transactions for either the purchase or transportation of ANS natural gas off the Slope.[10]  [Opp. 32 (describing "the complete suppression of output of North Slope gas"), 34 (claiming that these purported markets "*would be* thriving, active markets but for defendants' anticompetitive conduct").]  Plaintiff nonetheless argues that its antitrust claims based upon those nonexistent markets are viable either (1) because at least some of those claims (the First, Second, and Third Claims) do not require injury to competition in an existing market, or (2) because plaintiff's conclusory allegations that those markets exist are sufficient despite the contrary factual allegations that there now are no transactions, and can be no such transactions without a pipeline. None of plaintiff's arguments and subarguments, as discussed below, saves plaintiff's antitrust claims based upon these nonexistent ANS gas markets.

---

[9]  The First and Second Claims are also based upon alleged effects on competition in two markets in which natural gas other than ANS gas is sold -- one involving "the sale of natural gas in North America" and another "the sale of natural gas to Southcentral and Interior Alaska."  For separate reasons, discussed at BPXA Mem. 22-24 and pp. 17-18 below, the allegations regarding these broader markets do not save the First and Second Claims.

[10]  As stated at BPXA Mem. 19 n.8, there are relatively small volume sales for North Slope use. Those limited and local transactions, however, do not establish the broad ANS gas markets on which plaintiff purports to rely here.

BPXA's Reply Memo. in Support of Motion to Dismiss
*Alaska Gasline Port Authority v. ExxonMobil, et al.*, Case No. F05-0026 CIV (RRB)

11

1.    Like all antitrust claims, the First, Second and Third Claims cannot exist
without injury to competition in an existing market

Plaintiff initially contends that its first three claims do not require a market in which competition actually could be injured.  Plaintiff offers two reasons why its First and Second Claims, which allege contracts or conspiracies in unreasonable restraint of trade in violation of Sherman Act § 1, do not require the existence of a market in which competition could be restrained:  (1) the Complaint alleges "two *per se* violations, neither of which requires an analysis of the competitive effects in any market" [Opp. 30], and (2) since the Complaint alleges "actual anticompetitive effects based on a marked restraint on output, no 'elaborate market analysis' is necessary to find the restraint unreasonable" [*id.* 32].

As is obvious from the language just quoted from the Opposition, plaintiff's argument confuses two very different issues.  The first issue, which is the issue presented here, is whether an agreement (or "conspiracy") can violate section 1 if it does not restrain competition in an existing market.  None of the cases plaintiff cites holds that a violation can be established without such injury in an existing market.  Plaintiff's cases instead address the second issue, which is not presented here, of whether a plaintiff must allege and prove facts establishing the contours of a market when it alleges certain types of agreements that so clearly restrain competition that the unreasonableness of the restraint can be presumed.  However, as plaintiff's own leading authority notes, in *any* section 1 case, whether *per se* or not, "the criterion to be used in judging the validity of a restraint on trade is its impact on competition."  *NCAA v. Bd. of Regents*, 468 U.S. 85, 104 (1984) [cited at Opp. 30]  If the market in which plaintiff alleges the anticompetitive effects of the agreement occurred does not exist, there can be no impact on competition and hence no section 1 violation.

In any event, plaintiff's *per se* label does not save the First and Second Claims for another reason.  Plaintiff's use of the *per se* label does not control this issue of law, which the Court can decide on a motion to dismiss.  *See Smilecare Dental Group v. Delta Dental Plan of Cal. Inc.*, 88 F.3d 780, 783 (9th Cir. 1996) ("Dismissal for failure to state a claim is appropriate where 'the complaint states no set of facts which, if true, would constitute an antitrust offense, notwithstanding its conclusory language regarding the elimination of competition and improper

purpose.'"). While the Complaint attaches different headings to the First and Second Claims,[11] each essentially asserts a boycott claim, namely, that defendants agreed not to sell ANS gas to plaintiff. As stated at BPXA Mem. 20, the only boycott claims that come within the *per se* rule are those where defendants "boycott suppliers or customers *in order to discourage them from doing business with a competitor.*" *Adaptive Power Solutions, LLC v. Hughes Missile Sys. Co.*, 141 F.3d 947, 950 (9th Cir. 1998) (emphasis in original). Since the Complaint does not allege that defendants' purpose here was to discourage plaintiff from doing business with defendants' competitors, no *per se* claim is alleged under *Adaptive Power*. The Opposition's response to this argument [at 30-31] does not even acknowledge this controlling Ninth Circuit opinion. Instead, the Opposition cites *Northwest Wholesale Stationers, Inc. v. Pacific Stationary & Printing Co.*, 472 U.S. 284, 298 (1985), as establishing a purportedly broader rule than applied in *Adaptive Power*. However, the rule of law stated in *Adaptive Power* expressly reflects the Ninth Circuit's interpretation of *Northwest Wholesale*. 141 F.3d at 950. More significantly, the Ninth Circuit rejected as a matter of law the plaintiff's argument there, much like that offered here, that the boycott it alleged came within the category of boycotts that are *per se* illegal under *Northwest Wholesale* simply because defendants with alleged market power deprived plaintiff of an element needed for its business. *Id.*

Plaintiff also argues that the Complaint's allegation that the effect of defendants' agreement was "the complete suppression of output of North Slope gas" is sufficient to state a section 1 claim under the rule of reason. This argument makes no sense in the context of the purported relevant markets limited to ANS gas. While the "suppression" of any output of, and hence transactions in, ANS gas theoretically may cause an anticompetitive effect in some existing market where ANS gas might compete but for an antitrust violation (although that is not the case here, for reasons discussed below), such alleged "suppression" cannot create a market in which no transactions, and thus no competition to be restrained, currently exist. Moreover, the allegations regarding anticompetitive effects cited at Opp. 32 are mere conclusions of anticompetitive effect or

---

[11] The Complaint describes the First Claim as alleging "concerted refusals to deal and group boycott," and the Second Claim as alleging an "agreement not to compete."

BPXA's Reply Memo. in Support of Motion to Dismiss
*Alaska Gasline Port Authority v. ExxonMobil, et al.*, Case No. F05-0026 CIV (RRB)

13

purpose that this Court need not consider on a motion dismiss. *Smilecare Dental Group*, 88 F.3d at 783; *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 734 (9th Cir. 1987).

Finally, plaintiff argues that its Third Claim, for conspiracy to monopolize the ANS gas markets, "does not require allegations or proof of relevant markets." [Opp. 31] Once again, plaintiff confuses principles regarding establishing the contours of a market (*i.e.,* which transactions are included within the market) with the more fundamental issue of whether an antitrust violation can be predicated solely on a hypothetical market based on a set of transactions that have not occurred. Plaintiff's opinions at most establish that a conspiracy to monopolize claim does not require the plaintiff to establish the product and geographic boundaries of the market to be monopolized. Those cases, however, do not support the absurd contention that a defendant can be guilty of conspiring to monopolize a market that does not exist. Moreover, even the opinions plaintiff cites recognize that a conspiracy to monopolize claim requires specific intent to *monopolize*, leading to the question: Monopolize what? The obvious answer is: monopolize a "market." Since there currently is no ANS gas market, defendants cannot be alleged to have conspired to monopolize that market.

> 2.    The Complaint's factual allegations establish that there are no existing markets for transportation or purchase of ANS natural gas

Plaintiff argues, as an alternative to its theory that it can state an antitrust claim without injury to competition in a relevant market, that "the Complaint properly pleads harm in relevant markets" defined entirely with respect to ANS gas. [Opp. 32] However, this argument begins with a definition of antitrust "markets" that is utterly inconsistent with plaintiff's core premise -- that such markets exist even when there are no transactions. Thus, it defines a geographic market as "the area[ ] in which the seller operates and where consumers can turn, as a practical matter, for supply of the relevant product." Under this definition, there are no markets for ANS gas, because there are no sellers of ANS gas, and no places where consumers can turn, as a practical matter, for ANS gas. Nor can there be such sellers or places for consumers to buy ANS gas without a pipeline, as the Complaint alleges [¶¶ 15, 166] and the Opposition concedes [Opp. 32, 36]. *See* pp. 11-12 above.

BPXA's Reply Memo. in Support of Motion to Dismiss
*Alaska Gasline Port Authority v. ExxonMobil, et al.*, Case No. F05-0026 CIV (RRB)

14

Plaintiff claims that there is "ample precedent" for markets in which no transactions exist. [Opp. 34; *see also id.* 36-38]  Yet, plaintiff cities no opinions allowing an antitrust claim to proceed where there were no transactions in the purported relevant market.[12]  The three cases cited at Opp. 34-35 all involved natural gas markets in which there already were substantial numbers of transactions.[13]  They certainly do not support plaintiff's contention that a market can exist for antitrust purposes without current transactions.

Nor do any of the three cases discussed at Opp. 36-38 involve an antitrust claim premised on a purported relevant market with no current transactions.  In *Rebel Oil Co. v. Atl. Richfield Co.,* 51 F. 3d 1421, 1434 (9th Cir. 1995), there were millions of gallons of gasoline sold in Las Vegas. The parties' only dispute was whether the relevant market should include only the self-serve sales or also the full-serve sales of gasoline in Las Vegas.  The Ninth Circuit's reference to, "potential ability" to take business from another company did not refer, as the Opposition suggests, to potential transactions, much less to the notion that a market could be premised solely on potential transactions, but rather to whether full-serve marketers had the potential to take business away from self serve marketers, and therefore should be included in the relevant market.  That concept of "potential" does not support plaintiff's argument here.

*Brownlee v. Applied Biosystems Inc.*, 1989 WL 53864, at *2 (N.D., Cal. Jan 9, 1989), also did not involve a market with no actual transactions.  To be sure, the defendant in that case, like BPXA here, argued that the complaint alleged "a market with no products, no sellers and no buyers."  But, the court did not address the legal issue that would be presented if those facts were true.  Rather, the court ruled that defendant had not correctly described the facts alleged in the

---

[12]  The Opposition cites the concept of "innovation markets" in the U.S. Dept. of Justice & FTC, Antitrust Guidelines for the Licensing of Intellectual Property, § 3.2.3 (April 6, 1995).  [Opp. 37] Those guidelines are not law, just guidelines for enforcement.  The Opposition cites no case finding an antitrust violation based upon an "innovation market."  Moreover, the definition of an "innovation market" -- "the research and development directed to particular new or improved goods or processes" -- does not fit this situation.

[13]  *Paladin Assocs, Inc. v. Montana Power Co.,* 328 F. 3d 1145, 1551 (9th Cir. 2003) ("Natural gas and natural gas transportation services are sold separately."); *United States v. Enova Corp.*, 107 F. Supp. 2d 10 (D. D.C. 2000) (consent decree involving existing markets for natural gas transportation and storage services in Southern California); *Destec Energy, Inc. v. S. Cal. Gas Co.*, 5 F. Supp. 2d 433 (S.D. Tex 1998) (natural gas transportation market in Kern County, California).

Complaint.  There, one of the plaintiffs (MSI) already had "introduced" the product at issue [*id*. at *1], and was at the time of the complaint a "commercial manufacturer and seller of such products" [*id*. at *2].  While it is true that defendants were not making or selling the product, the circumstance to which the Opposition points to suggest that there were *no* transactions in the product, the fact that the plaintiff made and sold the product was sufficient to allege a relevant market.  In short, the court in *Brownlee* did not hold, as the Opposition contends, that there can be "a market with no products, no sellers, and no buyers."  Rather, the court held that the complaint there, unlike the Complaint here, alleged facts showing that there was a product, a (albeit only one) seller, and buyers, and that therefore there was a market.

Similarly, *Consol. Gas Co. of Florida, Inc. v. City Gas Co. of Florida*, 880 F. 2d 297 (11th Cir. 1989), does not support the Opposition's characterization that it found a relevant market "[d]espite the obvious absence of any transactions in the market."  [Opp. 38]  First, the case makes clear that there were actual sales in the relevant market -- the wholesale market for gas sales -- by Florida Gas Transmission Company.  880 F. 2d at 299.  The language cited by the Opposition focused not on whether that market existed, but rather whether the defendant could have monopoly power in that existing market even though it had not made any wholesale sales.  The court noted only the unsurprising conclusion that defendant, which had a substantial supply of gas, could have resold that gas in the wholesale market; indeed, defendant had entered into a contract for such resales.  The issue was simply whether the fact that defendant made no gas sales under the contract proved that defendant did not have the power to make such sales.  That issue does not even resemble the issue presented here -- whether an antitrust market can exist without any actual sales.

BPXA Mem. 17-19 cited a number of opinions squarely holding that there can be no market in such circumstances.  The Opposition seeks to distinguish these opinions on the ground that the legal principle was not announced in the context of a motion to dismiss.  [Opp. 39-40]  The procedural posture of those cases, however, does not make the fundamental principle of antitrust law they stated any less the controlling law.  Nor does the procedural posture of this case matter if the issue of law this motion seeks to resolve is squarely presented by the factual allegations of the Complaint.  The issue is presented here because the Complaint alleges as a

BPXA's Reply Memo. in Support of Motion to Dismiss
*Alaska Gasline Port Authority v. ExxonMobil, et al.*, Case No. F05-0026 CIV (RRB)

16

factual matter that ANS gas transportation and purchase transactions do not, and without a pipeline cannot, exist. Accordingly, this Court may decide this issue at this time. *Tanaka v. Univ. of S. Cal.*, 252 F. 3d 1059, 1065 (9th Cir. 2001).[14]

> C.    The Complaint Fails To State Any Antitrust Claim Based Upon Alleged Restraints Of, Or Lessening Of Competition In, The Existing Markets For The Sale Of Natural Gas

BPXA also moved on two separate grounds to dismiss the First and Second Claims to the extent that they were based upon the other purported relevant markets asserted in the Complaint, those in which natural gas other than ANS gas now is sold. First, plaintiff lacks standing to assert any restraint of trade in those markets because it is not a participant in those markets and its alleged losses do not reflect the alleged competitive effects in those markets. Second, all of the defendants' alleged wrongful conduct involves ANS gas, which is not a product currently competing in those markets and which cannot so compete until a pipeline is built. Defendant's alleged wrongful conduct regarding ANS gas therefore could not possibly restrain trade in those markets. [BPXA Mem. 22-24]

The Opposition does not separately address those arguments. If the Court accepts BPXA's arguments that the First and Second Claims cannot be based upon the non-existent ANS natural gas markets, it should dismiss those claims because they are similarly not saved by the Complaint's allegations regarding the existing markets for natural gas.

> D.    The Complaint States No Antitrust Claim Based On BP's Mergers (Fifth Claim for Relief)

Plaintiff's Fifth Claim based on Clayton Act § 7 fails for three reasons: (1) it alleges no facts supporting its conclusory assertion that BP's mergers violated the Clayton Act; (2) it fails to allege an antitrust injury attributable to the mergers; and (3) it is time-barred. [BPXA Mem.

---

[14]  BPXA cited *Tanaka*, and many other opinions [BPXA Mem. 21-22], for the proposition that ANS gas, even after a pipeline is built and transactions occur, will not be a market to itself but rather a product competing against other natural gas in a broader market. While the Opposition's definitions of geographic and product markets [*see* 32-33] support that proposition, the Opposition [at 35] also mischaracterizes BPXA's argument. BPXA does not contend that just because a downstream market exists there can never be an upstream market. Rather, BPXA contends that the factual allegations in the Complaint establish that ANS gas will not be a separate market.

BPXA's Reply Memo. in Support of Motion to Dismiss
*Alaska Gasline Port Authority v. ExxonMobil, et al.*, Case No. F05-0026 CIV (RRB)

17

24-29]  The Opposition merely repeats the unsupported conclusions alleged in the Complaint while sidestepping these flaws in its pleading.

1.    The Complaint fails adequately to allege that the mergers were illegal

Clayton Act § 7 prohibits acquisition of another company's "stock or assets *if the effect of the acquisition* 'may be substantially to lessen competition, or to tend to create a monopoly'" in a properly-defined antitrust market.  *United States v. Oracle Corp.*, 331 F. Supp. 2d 1098, 1109 (N.D. Cal. 2004) (emphasis added); *see* 15 U.S.C. § 18.  To state a claim, plaintiff must allege facts indicating that BP's mergers "may substantially lessen competition" in such a market.  *FTC v. Procter & Gamble Co.*, 386 U.S. 568, 577 (1967); *see Oracle Corp.*, 331 F. Supp. 2d at 1110 ("prima facie case of a section 7 violation" is shown by facts demonstrating that the merger "would produce 'a firm controlling an undue percentage share of the relevant market, and result [] in a significant increase in the concentration of firms in the market'").

Although plaintiff's Complaint contains sweeping allegations of generalized anticompetitive effects, these conclusory allegations do not "outline or adumbrate" facts indicating how BP's mergers could have lessened competition in any relevant market.  *Rutman Wine Co.*, 829 F.2d at 736: *see Big Bear Lodging Ass'n v. Snow Summit, Inc.*, 182 F.3d 1096, 1104-05 (9th Cir. 1999) (dismissal because plaintiff failed to "allege facts demonstrating that Defendants' conduct has an anticompetitive effect").  At the very least, pleading this element of a Clayton Act violation requires factual (as opposed to merely conclusory) allegations that the challenged mergers allowed BPXA to acquire additional gas reserves of sufficient magnitude to materially increase its "percentage share of the relevant market" or the "concentration of firms" in that market.  But no such facts are alleged.

In its Complaint, plaintiff treated BP Amoco's 1999 acquisition of Atlantic Richfield Company as the purported centerpiece of its Clayton Act § 7 claim against BP.  [*E.g.*, Cmpl., ¶¶ 140-144, 153]  However, BPXA demonstrated in its moving papers that the FTC consent decree approving the merger required divestiture of "all of ARCO's assets in Alaska."  [BPXA Mem. 26-28]  Through this merger, BPXA acquired *no* additional North Slope gas assets, and experienced *no* increase in its percentage share of any relevant market.  Plaintiff's Opposition quickly changes

BPXA's Reply Memo. in Support of Motion to Dismiss
*Alaska Gasline Port Authority v. ExxonMobil, et al.*, Case No. F05-0026 CIV (RRB)

18

ground, and instead cites BP's 1998 merger with Amoco and transactions involving three smaller North Slope fields (Milne Point, Badami and Northstar) as the basis for its Clayton Act § 7 claim. [Opp. 50-51]  But here again, plaintiff's Complaint contains no factual allegations that "outline or adumbrate" what North Slope gas reserves, if any, BPXA acquired through these transactions. [*See* BPXA Mem. 26-27]

To sidestep the patent inadequacy of its pleading, plaintiff chides BPXA for seeking to "shoe-horn" its Clayton Act § 7 claim into a typical merger analysis ("Plaintiff here is not trying to prevent a merger").  [Opp. 51]  Instead, plaintiff argues that a Clayton Act § 7 violation is stated by its allegation that BPXA and XOM "held and used" acquired North Slope gas assets "to prevent the development" of its proposed pipeline.  [*Id.*]  But this allegation states no violation of Clayton Act § 7.  As *Oracle* explains, this statute is violated only if "*the effect of the acquisition* 'may be substantially to lessen competition, or to tend to create a monopoly.'"  331 F. Supp. 2d at 1109 (emphasis added); *see* 15 U.S.C. § 18.  To plead a violation, plaintiff must allege facts sufficient to indicate that the challenged transactions, in themselves, produced a firm controlling an "undue percentage" of the market or led to an undue "increase in concentration" in the market.  *See Oracle,* 331 F. Supp. 2d at 1110.

## 2.   The Complaint fails adequately to allege plaintiff's antitrust injury

Plaintiff's Fifth Claim also fails because it alleges no facts showing that plaintiff suffered "threatened loss or damage" of the "type the antitrust laws were designed to prevent and that flows from that which makes defendants' acts unlawful."  *Cargill, Inc. v. Monfort of Colorado, Inc.*, 479 U.S. 104, 113 (1986).  Plaintiff's Complaint rests on its allegation that XOM and BP possess "such a large share of North Slope Gas" that "the boycott by them alone" is enough to "stop the Authority's pipeline."  [Cmpl. ¶ 22]  To link plaintiff's alleged injury (its inability to proceed with its project) to BP's mergers challenged in the Fifth Claim, plaintiff would need to allege facts indicating that, absent these transactions, sufficient North Slope gas would be held by other producers to allow plaintiff to proceed with its project.  [*See* BPXA Mem. 28-29]  Not only is this not alleged but other facts conceded in the Complaint (*e.g.,* ConocoPhillip's "36.6%" share of the

BPXA's Reply Memo. in Support of Motion to Dismiss
*Alaska Gasline Port Authority v. ExxonMobil, et al.*, Case No. F05-0026 CIV (RRB)

19

vast Prudhoe Bay gas reserves) establish the implausibility of this thesis.  [*Id.*]

Plaintiff's Opposition nowhere addresses this ground of BPXA's motion.  This lack of opposition confirms that plaintiff alleges no antitrust injury attributable to its Fifth Claim, requiring that this claim be dismissed.

3.    <u>Any claim based on the mergers is time barred</u>

Plaintiff does not dispute that all of BP's mergers challenged in the Complaint closed outside the four-year limitation period.  [*See* Opp. 45-48]  Instead, plaintiff argues it should be allowed to conduct discovery before the statute of limitations is applied.  [*Id.*]  But plaintiff's Complaint alleges no facts establishing any basis to avoid application of the limitations period to its Clayton Act § 7 claim.  Its Opposition contains no explanation or proffer of what additional facts discovery might plausibly disclose that could justify this result.  Plaintiff cannot avoid the statute of limitations by speculating that discovery might turn up presently unknown facts that could defeat this otherwise applicable defense.

## II.    PLAINTIFF LACKS STANDING TO BRING THE UTPA CLAIM (SIXTH CLAIM FOR RELIEF)

Plaintiff lacks standing to bring its Sixth Claim, for a violation of the Alaska Unfair Trade Practices and Consumer Protection Act ("UTPA"), because it lacks standing to bring its antitrust claims.  [*See* BPXA Mem. 29-30]  The Opposition does not dispute that plaintiff's  standing under the UTPA depends upon it having standing under the antitrust laws.  The Opposition argues only that plaintiff has UTPA standing because it has antitrust standing.  [Opp. 55]  Since, as demonstrated at pp. 3-10 above, plaintiff lacks antitrust standing, this argument fails and the UTPA claim also should be dismissed.

## III.    THE COMPLAINT STATES NO CLAIM FOR TORTIOUS INTERFERENCE BECAUSE THE ALLEGED WRONGFUL CONDUCT IS PRIVILEGED (SEVENTH CLAIM FOR RELIEF)

Alaska law recognizes that a property owner is "privileged, as a matter of law, to intentionally interfere" with another party's prospective business opportunity that requires transferring or disposing of property belonging to the owner.  *Ran Corp. v. Hudesman*, 823 P.2d 646, 646 (Alaska 1991) (landlord's "financial interest" in his property entitles him to interfere with

20

BPXA's Reply Memo. in Support of Motion to Dismiss
*Alaska Gasline Port Authority v. ExxonMobil, et al.*, Case No. F05-0026 CIV (RRB)

proposed lease assignment).  Plaintiff bases its tortious interference claim on BPXA's alleged "refusal to supply natural gas" to plaintiff's project.  However, because BP owns the right to "drill, produce and market" this North Slope gas, its alleged decision not to supply gas to plaintiff is privileged as a matter of Alaska law.  [BPXA Mem. 30-32]

Plaintiff argues that, to determine whether BPXA's refusal to supply gas is privileged, the Court must "inquir[e] into [BPXA's] motives" in a manner not appropriate on a motion to dismiss.  [Opp. 54]  Such inquiry is required, plaintiff contends, by the Alaska Supreme Court's *Ran Corp.* decision in which the court considered whether the landlord defendant's objection to an assignment of the lease to its property was motivated by "spite, malice, or some other improper objective."  *See* 823 P.2d at 649.  But this case differs from *Ran Corp.* in a crucial respect.  Unlike the defendant there, BPXA has entered no contract committing its North Slope gas to any third party, and so remains free to decide how to use or dispose of this property in its discretion.  *Phillips v. Washington Legal Found.*, 524 U.S. 156, 167 (1998) ("the fundamental maxim of property law [is] that the owner of a property interest may dispose of all or part of that interest as he sees fit").  Under plaintiff's view of the law, a potential plaintiff disappointed by a property owner's refusal to commit its property to a transaction advocated by the plaintiff could state a tort claim merely by alleging that the owner's refusal was motivated by an "improper motive."  [Opp. 54]  Plaintiff cites no authority condoning such a result, and the ramifications of subjecting property owners to potential tort liability absent a judicial inquiry into their motives when disposing of their property are breathtaking and alarming.  As a matter of law, plaintiff's "prospective business opportunity" to profit from the transport and sale of North Slope gas belonging to BPXA cannot trump BPXA's privilege as the owner of the gas to decide whether, and how, to utilize this property.[15]  The Seventh Claim for Relief should be dismissed.

---

[15]  Assuming, arguendo, that an inquiry into BPXA's motives in declining to commit its gas to plaintiff is permitted, the Complaint acknowledges that BPXA's alleged conduct arose out of a desire to protect and promote its own economic self-interest.  [*See*, *e.g.*, Cmpl. ¶¶ 1, 7, 11, 14, 17, 21]  In *Ran Corp.*, the Alaska Supreme Court created a dichotomy between conduct undertaken "for economic reasons" and conduct intended to injure plaintiff.  *Ran Corp.*, 823 P.2d at 648 (discussing the Supreme Court's previous decision in *Bendix Corp. v. Adams*, 610 P.2d 24 (Alaska 1980)).  Here, by plaintiff's own admission, BPXA's alleged conduct was undertaken "for economic reasons" -- putting this conduct squarely on the "privileged" side of the line.

BPXA's Reply Memo. in Support of Motion to Dismiss
*Alaska Gasline Port Authority v. ExxonMobil, et al.*, Case No. F05-0026 CIV (RRB)

21

IV.     THE COMPLAINT STATES NO CLAIM FOR BREACH OF CONTRACT AGAINST
        BPXA (EIGHTH CLAIM FOR RELIEF)

Plaintiff's Eighth Claim for breach of the Charter with the State of Alaska should be
dismissed on any of three grounds: (1) the Charter provides explicitly that only parties to it may
enforce its provisions; (2) the Charter's provisions relating to North Slope gas are enforceable only
by arbitration; and (3) the North Slope gas provisions expired on December 31, 2003, and
plaintiff's Complaint alleges *no* conduct constituting a breach of these provisions that occurred
prior to 2004. [BPXA Mem. 32-36] Plaintiff's Opposition fails to rebut any of these grounds.

A.     The Charter's Express Terms Permit Only The State Of Alaska To Enforce
       Its Provisions For Good Faith Negotiations With Third Parties

BPXA will assume for purposes of this motion that the Charter's signatories (the State, BP
and Atlantic Richfield) contemplated that plaintiff's project (along with other North Slope gas
proposals) might benefit from its gas development provisions. But this fact does not make plaintiff
an intended third party beneficiary of the Charter or allow plaintiff to enforce its terms. "To create a
third party right to enforce a contract, the language of the contract must clearly evince an intent to
permit enforcement by the third party." *Consol. Edison, Inc. v. Northeast Utils.*, 426 F.3d 524, 528
(2d Cir. 2005) (internal quotations and punctuation omitted); *see also* RESTATEMENT (SECOND) OF
CONTRACTS § 302(1) (1981). Two separate provisions of the Charter state explicitly that only
parties to this agreement are entitled to enforce its North Slope gas provisions: (1) paragraph V.D
("This Charter . . . is not intended to confer any rights or remedies" upon anyone not a party to the
Charter, and (2) paragraph I.J.7 (North Slope gas provisions "shall be enforceable exclusively by
arbitration between the State and BP and ARCO").

Plaintiff argues that "specific contract terms are given greater weight than general
language," and BPXA agrees with this principle. [Opp. 57] But the question posed by plaintiff's
lawsuit is whether a person that is not a party to the Charter is entitled to enforce its terms. The
Charter's specific provisions that address this question -- those cited by BP -- trump the
generalized provisions cited by plaintiff, which nowhere address whether a person not a party to
the Charter may enforce its terms. The Court must respect the contracting parties' explicit

BPXA's Reply Memo. in Support of Motion to Dismiss
*Alaska Gasline Port Authority v. ExxonMobil, et al.*, Case No. F05-0026 CIV (RRB)

22

statement of their intent in this regard.[16]

B.    The Charter Permits Its North Slope Gas Provisions To Be Enforced Only
      Through Arbitration

Plaintiff argues that the Charter's provision requiring arbitration of disputes reflecting its

gas development provisions is limited to controversies between the State and other parties to the

Charter or, alternatively, that this provision is at least ambiguous in this respect.[17]  This argument

is meritless.  The language of this provision is clear and unequivocal; it is difficult to imagine how

the parties could have stated more clearly that the Charter's provisions relating to North Slope gas

may be enforced exclusively by arbitration.  Alaska law, moreover, incorporates a "strong public

policy in favor of arbitration," and "[a]ny ambiguity with regard to arbitrability is to be construed

in favor of arbitration."  *Ahtna, Inc. v. Ebasco Constructors, Inc.,* 894 P.2d 657, 662 (Alaska

1995).  By limiting enforcement of paragraph I.J to arbitration alone, the Charter compels

dismissal of the Eighth Claim for Relief.

C.    Plaintiff Has Not Alleged Conduct That Occurred Before The Pertinent
      Charter Provisions Expired

Plaintiff acknowledges that the Charter's provisions requiring good faith negotiations

regarding North Slope gas development expired on December 31, 2003.[18]  [Opp. at 55-56]

Plaintiff also concedes that its "detailed offer" to purchase North Slope gas alleged in the

Complaint was not made until more than a year later  --  in April 2005.  Plaintiff asserts, however,

that paragraph 101 of its Complaint adequately alleges BP's breach of the Charter's provision prior

---

[16]  Even if plaintiff were somehow viewed as an intended beneficiary of the Charter, its purported
right to enforce this agreement would be subject to the Charter's express language prohibiting
enforcement by third parties.  Restatement (Second) of Contracts § 309 & cmt. b (1981)
("Where there is a contract, the right of a beneficiary is subject to any limitations imposed by the
terms of the contract.").

[17]  Charter ¶ I.J.7 ("The parties agree that the terms of paragraph I.J of this Charter shall be
enforceable exclusively by arbitration between the State and BP and ARCO under the rules of the
American Arbitration Association.").

[18]  Paragraph I.J.1 states:  "*During the period after the merger is completed through December 31,
2003*, BP and ARCO shall negotiate in good faith to make available to third parties at a
commercially reasonable fair market price . . . Alaska North Slope natural gas."  Paragraph I.J.4
states:  "*During this period*, BP and ARCO will give fair consideration to all reasonable
approaches, projects and plans proposed by the State . . . and others, including LNG projects
developed or proposed by the newly established port authority . . . ."  (Emphases added).

to their December 2003 expiration.  [*Id.*]  This paragraph states in full:

> The Authority has repeatedly attempted to engage the Defendants in
> good faith negotiations regarding the purchase of gas from the
> Defendants' resources on the North Slope.

Under Fed. R. Civ. Proc. 12(b)(6), a plaintiff's reliance on "conclusory allegations without more" cannot defeat a motion to dismiss.  *Ascon Properties, Inc.*, 866 F.2d at 1155-56.  When drafting its Complaint, plaintiff no doubt knew of the December 2003 expiration of the Charter's pertinent provisions, and yet elected to allege in factual terms only its untimely April 2005 offer to purchase gas.  The Court may not read into paragraph 101 of the Complaint something that plainly is not there:  an allegation that plaintiff offered to purchase North Slope gas during the limited timeframe specified in the Charter.

## V.    PLAINTIFF'S INJUNCTIVE RELIEF CLAIMS SHOULD BE DISMISSED FOR FAILURE TO JOIN PARTIES WHOSE PRESENCE IS REQUIRED BY RULE 19

Citing Rule 19, BPXA seeks dismissal of plaintiff's claims for injunctive relief on the grounds of the failure to name parties without whose presence no such relief cannot be granted.  [BPXA Mem. 36-37]  Because only one pipeline for North Slope gas will be built, plaintiff's request that the Court issue a mandatory injunction ordering defendants to sell their North Slope gas to plaintiff effectively will require that plaintiff have the only pipeline for ANS gas.  No such injunction is legally possible or proper (even ignoring other fatal issues) without the presence of other parties that plaintiff has chosen not to join.  [*Id.*]

Rule 19 requires joinder of all parties whose presence in the lawsuit is needed to grant full relief or whose interests should be protected in fashioning appropriate relief.  Plainly, in the absence of such other significant owners of North Slope gas as the State of Alaska and ConocoPhillips, the Court cannot impose the injunction sought by plaintiff.  Plaintiff ignores these fundamental and insuperable difficulties, and instead argues that a "host of factors" should be considered before Rule 19 is applied.  [Opp. 62]  Plaintiff also suggests -- without offering any suggestion or proposal as to how this could be accomplished -- that the Court may be in a better position to devise "appropriate equitable relief" later in the litigation.  [Opp. 63]

Neither argument meets the thrust of BPXA's motion.  It is the sweeping scope of plaintiff's demanded injunctive relief, and the unavoidable impact and prejudice of such relief on

BPXA's Reply Memo. in Support of Motion to Dismiss
*Alaska Gasline Port Authority v. ExxonMobil, et al.*, Case No. F05-0026 CIV (RRB)

24

absent third parties, that dooms the relief plaintiff seeks here.  Plaintiff's injunction claim should

be dismissed if it does not add those parties now, not at some later time when it may be too late for

them to protect their interests.

<u>CONCLUSION</u>

For the reasons discussed above and in BPXA's Memorandum, the Court should dismiss

the Complaint.  Because plaintiff cannot allege facts either to establish antitrust standing or to

convert BPXA's refusal to commit North Slope natural gas to plaintiff's project into a federal

antitrust claim, the dismissal should be without leave to amend.

ARNOLD & PORTER LLP
Ronald C. Redcay
Matthew T. Heartney
Angel L. Tang

FELDMAN ORLANSKY & SANDERS
Jeffrey M. Feldman

BP EXPLORATION (ALASKA) INC.
Bradley S. McKim

Dated:  March 28, 2006                  By:   <u>s/Jeffrey M. Feldman</u>
                                              Jeffrey M. Feldman
                                              Alaska Bar No. 7905029
                                              Attorneys for Defendant
395937_3.DOC                                  BP Exploration (Alaska) Inc.

**Certificate of Service**
I hereby certify that on March 28, 2006, a copy of the foregoing REPLY MEMORANDUM IN
SUPPORT OF MOTION TO DISMISS DEFENDANT BP EXPLORATION (ALASKA) INC.
was served electronically on Kevin Barry, John F. Cove Jr., Kenneth F. Rossman, IV, Robert
Silver, William Walker, Ronald C. Redcay, Matthew T. Heartney, Angel L. Tang, William B.
Rozell, and Douglas J. Serdahely, and via U.S. Mail to Charles E. Cole, David Beck, Paul
Hewitt, Erick Nichols, Fairley Spillman, and L. Nicole White.

By:      <u>s/Jeffrey M. Feldman</u>