IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

THE ALASKA GASLINE PORT
AUTHORITY,

       Plaintiff,

vs.

EXXONMOBIL CORPORATION, <u>et
al.</u>,

       Defendants.

Case No. 4:05-cv-0026-RRB

**<u>ORDER GRANTING DEFENDANTS'</u>**
**<u>MOTIONS TO DISMISS</u>**

## I.    INTRODUCTION

Before the Court are Defendants ExxonMobil Corporation, a New Jersey corporation; ExxonMobil Alaska Production, Inc., a Delaware Corporation; B.P. P.L.C., a United Kingdom corporation; and B.P. Exploration (Alaska) Inc., a Delaware Corporation (hereinafter collectively referred to as "Defendants") with Motions to Dismiss (Docket Nos. 30, 33 & 44).[1]  Defendants argue, among

---

[1]    Defendant B.P. P.L.C., a United Kingdom corporation, incorporates by reference all arguments in B.P. Exploration (Alaska) Inc.'s Motion to Dismiss and Memorandum (Docket Nos. 30 & 31), whereby the arguments made by B.P. Exploration (Alaska) Inc. apply equally to B.P. P.L.C.  <u>See</u> Clerk's Docket Nos. 44 & 45.

other things, that Plaintiff lacks the requisite standing to bring any antitrust claims. Plaintiff Alaska Gasline Port Authority ("Plaintiff") opposes at Docket No. 55 and, in response to this particular argument, contends the standing inquiry is factually complex and/or inappropriate for resolution on a motion to dismiss. The Court disagrees and, for reasons more carefully articulated herein, **GRANTS** Defendants' Motions to Dismiss.

In dismissing this action, the Court does not wish to diminish the validity of Plaintiff's proposal or to suggest that Plaintiff's efforts to supply North Slope gas to the Nation should be curtailed. On the contrary, Plaintiff appears well-intentioned, has accomplished a great deal to date, and may well have a valid plan. Decisions, however, regarding who, when, where, and how to accomplish this monumental task should involve all interested parties and are best made by the Alaska State Legislature and the people of Alaska.

Although the foregoing presents a technical analysis of some of the legal obstacles Plaintiff faces, the bottom line is that: (1) no one appears to have violated the law with regard to gasline negotiations; (2) considerable uncertainty remains regarding some fundamental aspects of Plaintiff's proposal(s); and (3) the Stranded Gas Development Act, Alaska Stat. § 43.82.010, et seq., creates a comprehensive and detailed process for negotiating and approving contractual agreements designed to make the

development and commercialization of North Slope gas a reality,[2] and expressly preempts Plaintiff's conflicting municipal action.[3] Indeed, Plaintiff, "as a creature of state law, lacks authority to take <u>any</u> action that frustrates the laws and polices of Alaska."[4]

## II.  FACTS

Plaintiff, a political subdivision of the State of Alaska, was created in 1999, pursuant to Alaska Stat. §§ 29.35.600 - 29.35.730, to construct a gas pipeline system from Alaska's North Slope to the Port of Valdez, Alaska.  Pursuant to this mandate, Plaintiff hopes to build a 48-inch buried pipeline from Prudhoe Bay to Valdez,[5] where it will construct and operate a liquefaction, storage, and loading facility.  In furtherance of this goal, Plaintiff alleges it has negotiated and contracted with the firms necessary to: (1) construct the pipeline and liquified natural gas distribution network; and (2) transport, distribute, and market the

---

[2]     Clerk's Docket No. 63 at 3 (citation omitted).  "The Stranded Gas Development Act establishes special procedures involving the Executive, the public, the Legislature, and the Judiciary directly in the process for negotiating, reviewing, and approving contracts for qualifying stranded gas projects."  <u>Id.</u> at 5 n.3 (citation omitted).

[3]     <u>Id.</u> (<u>citing</u> Alaska Stat. § 43.82.600).  Alaska Stat. § 43.82.600 provides: "If a provision of this chapter conflicts with another provision of state or municipal law, the provision of this chapter governs."

[4]     <u>Id.</u> at 8 (emphasis in original).

[5]     Plaintiff's proposed pipeline would run parallel to the Trans-Alaska Pipeline System ("TAPS").

gas. Plaintiff claims, however, that the only remaining impediment to its ability to construct the pipeline is Defendants' joint refusal to supply it with gas. Indeed, Defendants have stated, "nobody is going to build a pipeline without the producers."[6]

## III. STANDARDS OF REVIEW

### A. Rule 12(b)(1) of the Federal Rules of Civil Procedure.

"A plaintiff has the burden of proving that jurisdiction does in fact exist."[7] "Standing pertains to a federal court's subject matter jurisdiction under Article III."[8] "This [C]ourt, therefore, analyzes a plaintiff's standing to assert his or her claims under Rule 12(b)(1) of the Federal Rules of Civil Procedure."[9]

Pursuant to Rule 12(b)(1), the Court may, in its discretion,

---

[6]    Clerk's Docket No. 55 at 3 (quoting ExxonMobil's Chief Executive Officer Lee Raymond). Inasmuch as the remainder of the facts are well known to the parties, and more than substantially briefed within the applicable pleadings, they are not repeated herein except as necessary.

[7]    Samonte v. Frank, 2006 WL 1381879 at *2 (D. Haw. 2006)(citing Thornhill Pub. Co., Inc. v. General Tel. & Electronics Corp., 594 F.2d 730, 733 (9th Cir. 1979)).

[8]    Reudiger v. U.S. Forest Service, --- F. Supp. 2d ---, 2005 WL 3954739 (D. Or. 2005)(citing White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000)).

[9]    Samonte, 2006 WL 1381879 at *1 (citing White v. Lee, 277 F.3d 1214, 1242 (9th Cir. 2000)).

[D]ismiss a complaint when its allegations are insufficient to confer subject matter jurisdiction. Alternatively, the [C]ourt <u>may</u> dismiss a complaint under Rule 12(b)(1) when the facts that would give rise to its subject matter jurisdiction are disputed.[10]

When the allegations of a complaint are examined to determine whether they are sufficient to confer subject matter jurisdiction, "[a]ll allegations of material fact must be taken as true and construed in the light most favorable to the non-moving party."[11]   In addition, "the Court limits its analysis to the allegations of and the documents attached to the complaint,"[12] and scrutinizes the same more closely in order to make the necessary threshold determination as to whether it has subject matter jurisdiction.[13]   "This scrutiny [involves] taking preliminary evidence, weighing that evidence, and deciding as a matter of law whether the facts alleged support jurisdiction."[14]

---

[10]    <u>Id.</u> (<u>citing</u> <u>Thornhill Pub. Co., Inc. V. General Tel. & Elecs. Corp.</u>, 594 F.2d 730, 733 (9th Cir. 1979))(emphasis added).

[11]    <u>Federation of African American Contractors v. City of Oakland</u>, 96 F.3d 1204, 1207 (9th Cir. 1996).

[12]    <u>Samonte</u>, 2006 WL 1381879 at *1 (<u>citing</u> <u>Samco Global Arms, Inc. v. Arita</u>, 395 F.3d 1212, 1214 n.4 (11th Cir. 2005); <u>Gould Electronics Inc. v. U.S.</u>, 220 F.3d 169, 176 (3d Cir. 2000)).

[13]    <u>U.S. v. LSL Biotechnologies</u>, 379 F.3d 672, 683 (9th Cir. 2004).

[14]    <u>Id.</u> Moreover, the Supreme Court has stated, with respect to antitrust cases in particular, that dismissals prior to giving the plaintiff ample opportunity for discovery should be granted
(continued...)

**B.    Rule 12(b)(6) of the Federal Rules of Civil Procedure**.

A motion to dismiss for failure to state a claim made pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims in the complaint. A claim should only be dismissed if "it appears beyond doubt that a plaintiff can prove no set of facts in support of his claim which would entitle him to relief."[15] A dismissal for failure to state a claim can be based on either "the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."[16]  In reviewing a Fed. R. Civ. P. 12(b)(6) motion to dismiss, "[a]ll allegations of material fact in the complaint are taken as true and construed in the light most favorable to the nonmoving party."[17]  The court is not required to accept every conclusion asserted in the complaint as true; rather, the court

---

[14](...continued)
very sparingly. However, it is not proper to assume that the plaintiff can prove facts that is has not alleged or that the defendants have violated the antitrust laws in ways that have not been alleged. George Haug Co., Inc. v. Rolls Royce Motor Cars Inc., 148 F.3d 136 (2nd Cir. 1998) (emphasis added).

[15]    Vignolo v. Miller, 120 F.3d 1075, 1077 (9th Cir. 1997).

[16]    Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1988).

[17]    Vignolo, 120 F.3d at 1077.

"will examine whether conclusory allegations follow from the description of facts as alleged by the plaintiff."[18]

## IV. DISCUSSION

### A. **Plaintiff's Federal Antitrust Claims Lack Standing.**

Defendants first argue that the Court should dismiss Plaintiff's federal antitrust claims (Claims I-IV) because Plaintiff lacks the requisite standing to bring the same. In particular, Defendants argue Plaintiff fails to meet the "preparedness" standard established by In re Dual-Deck Video Cassette Recorder Antitrust Litigation, 11 F.3d 1460, 1465 (9th Cir. 1993). The Court agrees.

"In the Ninth Circuit, a potential market entrant must satisfy four 'preparedness' criteria to establish standing to sue."[19]

> To separate those who have suffered antitrust injury on account of alleged monopolistic barriers to entry, from those who have not, we consider (1) the plaintiff's background and experience in the prospective business, (2) "[a]ffirmative action on the part of [the] plaintiff to engage in the proposed business," (3) the plaintiff's ability to finance entry, and (4) consummation of contracts.[20]

---

[18]    Holden v. Hagopian, 978 F.2d 1115, 1121 (9th Cir. 1992) (quoting Brian Clewer, Inc. v. Pan American World Airways, Inc., 674 F. Supp. 782, 785 (C.D. Cal. 1986)).

[19]    Clerk's Docket No. 34 at 14.

[20]    In re Dual-Deck Video Cassette Recorder Antitrust
(continued...)

Because the Court concludes Plaintiff's complaint contains inadequate allegations on all four accounts, e.g., Plaintiff's ability to finance the construction of its proposed pipeline is speculative at best, its federal antitrust claims (Claims I-IV) are hereby **DISMISSED**.[21]  The remainder of Plaintiff's claims fare no better.

> **B.    Plaintiff's Fifth Claim for Relief Fails to State a Claim Under Section 7 of the Clayton Act.**

    Plaintiff next challenges, as a violation of section 7 of the Clayton Act, Defendant B.P. Exploration (Alaska) Inc.'s acquisitions of Amoco Corporation and Atlantic Richfield Company,

---

    [20](...continued)
Litigation, 11 F.3d 1460, 1465 (9th Cir. 1993)(quoting Solinger v. A&M Records, Inc., 586 F.2d 1304, 1310 (9th Cir. 1978)).

    [21]    Moreover, Plaintiff's purported "futility exception" is misplaced.  "The Ninth Circuit has expressly held that an antitrust plaintiff cannot evade its obligation to allege and prove preparedness by arguing that it was prevented from doing so by defendants' alleged wrongdoings."  Clerk's Docket No. 66 at 3 (citing In re Dual-Deck Video Cassette Recorder Antitrust Litigation, 11 F.2d 1460, 1464-65 (9th Cir. 1993))(emphasis added). Rather, the question is whether, assuming Defendants would have been willing to supply Plaintiff with the gas, Plaintiff would have been sufficiently prepared to engage in its intended business.  In light of the four factors enumerated in Solinger v. A&M Records, Inc., 586 F.2d 1304 (9th Cir. 1978), the Court concludes it would not have been.  Considerable uncertainty remains regarding both financing and permitting.

    "Plaintiff's antitrust claims also fail because they do not satisfy the most basic element of any antitrust claim  -- that the alleged wrongful conduct injured competition in an existing and relevant economic market."  Clerk's Docket No. 31 at 3 (emphasis added).

as well as Defendant ExxonMobil's 1999 merger of the Exxon and Mobil Corporations and Exxon's 1996 acquisition of half of Shell's production interest in Prudhoe Bay (Claim V). Plaintiff has failed to show, however, either: (1) that those acquisitions, which were approved by the Federal Trade Commission, were illegal; or (2) "that they possibly could have had any effect on the refusal to sell [P]laintiff the North Slope gas that is the core of this case."[22] Moreover, the Court concludes Plaintiff's challenges to the acquisitions and/or mergers, as revealed in the pleadings, are time-barred.[23]

   C.    **Plaintiff's State UTPA Claim Lacks Standing**.

      Plaintiff also lacks standing to bring its claim under Alaska's Unfair Trade Practices and Consumer Protection Act ("UTPA"), Alaska Stat. § 45.50.471 et seq. (Claim VI), because the claim is based upon the same allegations of anti-competitive conduct as Plaintiff's federal antitrust claims, whereby it suffers the same standing defects.[24]

---

[22]    Clerk's Docket No. 31 at 5.

[23]    Id. "Clayton Act § 4B, 15 U.S.C. § 15b (damages claims are "forever barred unless commenced within four years after the cause of action accrued.")." Id. at 29 (citing International Tel. & Tel. Corp. v. General Telephone & Electronics Corp., 518 F.2d 913, 929 (9th Cir. 1975), overruled on other grounds, California v. American Stores Co., 495 U.S. 271 (1990)).

[24]    "Under Alaska law, a plaintiff who bases a UTPA claim on purported [anti-competitive] conduct is required to demonstrate
(continued...)

D.   **Plaintiff's State Law Claim for Tortious Interference Fails as a Matter of Law.**

In addition, "Plaintiff's claim for tortious interference with prospective economic advantage [(Claim VII)] fails because each [D]efendant enjoys a privilege <u>not</u> to sell its North Slope gas to [P]laintiff."[25]   "Therefore, [Defendants'] refusal to sell that gas, which is the gravamen of [Plaintiff's state] tort claim, cannot be tortious."[26]

E.   **Plaintiff's Breach of Contract Claim Against Defendants B.P. Exploration (Alaska) Inc. & B.P. P.L.C. Fails for Three Independent Reasons.**

Plaintiff's breach of contract claim based on the Charter for Development of the Alaska North Slope (the "Charter"), entered into by the State of Alaska, B.P. P.L.C., and ARCO Alaska, Inc., on December 2, 1999 (Claim VIII), fails for three independent reasons.

---

[24](...continued)
that it has standing to sue under the antitrust laws." <u>Id.</u> at 30 (<u>citing</u> <u>Aloha Lumber Corp. v. University of Alaska</u>, 994 P.2d 991, 1002 (Alaska 1999)).

[25]   <u>Id.</u> at 5.   <u>See</u> <u>RAN Corp. V. Hudesman</u>, 823 P.2d 646 (Alaska 1991).

[26]   <u>Id.</u> (emphasis added).   At Clerk's Docket No. 55 at 23, Plaintiff suggests Sempra Energy "withdrew from the proposed project once it became evident that Defendants would never commit to supplying [Plaintiff's] pipeline with gas."   While this may be true, the Court notes that it does <u>not</u> constitute a harm for the purposes of establishing a prima facie case in tort.   Indeed, Defendants are <u>not</u> required to sell their gas to Plaintiff merely because Plaintiff entered into an agreement with a third-party. Consequently, because Plaintiff must be able to demonstrate a harm in a tort action, and has thus far been unable to do so, its tort action must fail.

To begin, "the Charter provides explicitly that only parties to it may enforce its provisions . . . ."[27]  Plaintiff is <u>not</u> a party to the Charter.  Moreover, "the Charter expressly disclaims the creation of third-party beneficiary rights."[28]  Plaintiff sues as "an intended beneficiary of" the Charter.  The Charter further provides that its "provisions relating to North Slope gas are enforceable only by arbitration . . . ,"[29] and "may only be enforced in an arbitration between its parties."[30]  Plaintiff is not a party to the Charter and this is not an arbitration.  Finally, "[P]laintiff's complaint is based on actions and inactions in and following April 2005, but the Charter's obligations regarding ANS natural gas, on which Plaintiff's claim is based, expired on December 31, 2003."[31]  Therefore, Plaintiff's claim, under the Charter, is not legally cognizable.

**F.    <u>Plaintiff's Alleged Failure to Sue Indispensable Third Parties is Not Examined in Light of Rules 19 & 12(b)(7).</u>**

Citing Fed. R. Civ. P. 19, Defendants B.P. Exploration (Alaska) Inc. & B.P. P.L.C. also seek dismissal of Plaintiff's "claims for injunctive relief . . . because the Court cannot grant

---

[27]    Clerk's Docket No. 65 at 22.

[28]    Clerk's Docket No. 31 at 6.

[29]    Clerk's Docket No. 65 at 22.

[30]    Clerk's Docket No. 31 at 6.

[31]    <u>Id.</u> (citation omitted).

the complete relief [P]laintiff seeks in the absence of the other owners of North Slope gas, including the State of Alaska and ConocoPhillips."[32]

Inasmuch as the Court concludes dismissal is appropriate, in conjunction with Fed. R. Civ. P. 12(b)(1) & (6), it need not fully address Defendants' Rule 19 argument. Were it to do so, the Court would likely find that the absence of any and/or all indispensable parties, to include the State of Alaska and ConocoPhillips, would interfere with a complete resolution of this matter.

G. **Plaintiff's Lawsuit is Preempted by the Stranded Gas Development Act.**

Defendant "ExxonMobil challenges [Plaintiff's] power to bring this lawsuit, claiming that the lawsuit conflicts with the Stranded Gas Development Act ("SGDA")."[33] Defendant is correct. Plaintiff, "as a political subdivision of the State, is [not] authorized to seek judicial relief that would interfere with Alaska's ability to develop North Slope gas resources under the process contemplated by the [SGDA] . . . ."[34] Indeed, the order which Plaintiff seeks "would [likely] upend the [SGDA] process,

---

[32]    Id. at 36.

[33]    Clerk's Docket No. 55 at 58.

[34]    Clerk's Docket No. 63 at 1 (emphasis added). Alaska Stat. § 43.82.600.

which presumes that Alaska officials will be able to evaluate the economics of competing pipeline projects by comparing costs and contractual commitments."[35]  The Court concludes, therefore, that Plaintiff's attempt to preempt the outcome of the SGDA's legislatively prescribed process is inconsistent with the purpose(s) of the same,[36] and thus precluded.

---

[35]    Clerk's Docket No. 34 at 48.

[36]    The purpose of the SGDA is to:

(1) encourage new investment to develop the state's stranded gas resources by authorizing establishment of fiscal terms related to that new investment without significantly altering tax and royalty methodologies and rates on existing oil and gas infrastructure and production;

(2) allow the fiscal terms applicable to a qualified sponsor or the members of a qualified sponsor group, with respect to a qualified project, to be tailored to the particular economic conditions of the project and to establish those fiscal terms in advance with as much certainty as the Constitution of the State of Alaska allows; and

(3) maximize the benefits to the people of the state of the development of the state's stranded gas resources.

Alaska Stat. § 43.82.010.  These objectives call "upon the Alaska Commissioners of Revenue and Natural Resources to negotiate tax and royalty rates with qualified project sponsors."  Clerk's Docket No. 34 at 46 (citing Alaska Stat. §§ 43.82.110, 43.82.130, and 43.82.200-220).

The endpoint of the Commissioners' work is a proposed contract specifying state tax and royalty treatment of a qualifying stranded gas project.  No such contract can take effect, however, until it has been subject to public notice-and-comment, Alaska Stat. § 43.82.410, and
(continued...)

ORDER GRANTING MOTIONS TO DISMISS - 13
4:05-CV-0026-RRB

**V.   CONCLUSION**

Having thoroughly reviewed the relevant briefings and having heard oral argument on the matter, Defendants' Motions to Dismiss (Docket Nos. 30, 33 & 44) are hereby **GRANTED**. Because Plaintiff "has not pleaded adequate facts to show that it is authorized, and has antitrust standing, to pursue this action,"[37] the matter is hereby **DISMISSED**.

ENTERED this 19th day of June, 2006.

/s/ RALPH R. BEISTLINE
UNITED STATES DISTRICT JUDGE

-------------------

[36](...continued)
approved by the state legislature, Alaska Stat. § 43.82.435.
Id.

[37]    Clerk's Docket No. 63 at 2.