ARNOLD & PORTER LLP
Ronald C. Redcay (Cal. Bar No. 067236)
Matthew T. Heartney (Cal. Bar No. 123516)
Angel L. Tang (Cal. Bar No. 205396)
777 South Figueroa Street, 44th Floor
Los Angeles, California  90017-5844
Telephone:  (213) 243-4000
Facsimile:  (213) 243-4199
Ronald_Redcay@aporter.com
Matthew_Heartney@aporter.com
Angel_Tang@aporter.com

Bradley S. McKim (Alaska Bar No. 0511089)
BP Exploration (Alaska) Inc.
900 East Benson Boulevard
Anchorage, AK 99508
Telephone:  (907) 564-5154
Facsimile:  (907) 564-4031
mckimbs@bp.com

*Attorneys for Defendant*
*BP Exploration (Alaska) Inc.*

KIRKLAND & ELLIS LLP
J. Andrew Langan
David J. Zott
Benjamin W. Hulse
200 East Randolph Drive
Chicago, Illinois  60601
Telephone:  (312) 861-2000
Facsimile:  (312) 861-2200
alangan@kirkland.com
dzott@kirkland.com
bhulse@kirkland.com

KIRKLAND & ELLIS LLP
G. Seth Beal
777 South Figueroa Street
Los Angeles, California  90017-5800
Telephone:  (213) 680-8400
Facsimile:  (213) 680-8500
sbeal@kirkland.com

*Attorneys for Defendant BP p.l.c.*

FELDMAN ORLANSKY & SANDERS
Jeffrey M. Feldman (Alaska Bar No. 7605029)
500 L Street, Suite 400
Anchorage, Alaska 99501
Telephone:  (907) 272-3538
Facsimile:  (907) 274-0819
feldman@frozenlaw.com

*Attorneys for Defendants*
*BP Exploration (Alaska) Inc. and BP p.l.c.*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ALASKA**

| | |
|---|---|
| THE ALASKA GASLINE PORT AUTHORITY, <br><br> Plaintiff, <br><br> v. <br><br> EXXONMOBIL CORPORATION, *et al.*, <br><br> Defendants. | Case No. F05-0026 CIV (RRB) <br><br> BP EXPLORATION (ALASKA) INC. AND BP P.L.C.'S MEMORANDUM IN OPPOSITION TO AGPA'S MOTION FOR LEAVE TO FILE AMENDED COMPLAINT <br><br><br> Judge:  The Honorable Ralph R. Beistline |

INTRODUCTION

A month after this Court dismissed all the claims in its complaint and two weeks after this Court entered final judgment, AGPA requests -- for the first time in this litigation -- that it be allowed to amend its complaint.[1]  By waiting this long, AGPA must overcome two significant hurdles to obtain leave to amend.  First, AGPA must persuade this Court to vacate the final judgment under Rule 59(e) of the Federal Rules of Civil Procedure.  Second, AGPA must demonstrate that it has satisfied Rule 15(a)'s standards for filing an amended complaint.  As discussed in BPXA and BP p.l.c.'s opposition to AGPA's motion to vacate judgment [Docket No. 95-1], filed with the Court on August 14, 2006, AGPA has failed to demonstrate any factors warranting the extraordinary relief of setting aside of judgment.  Furthermore, as will be demonstrated below, even if this Court were to allow AGPA to overcome the Rule 59 obstacle and reopen judgment, AGPA's proposed amended complaint does not satisfy the Rule 15 requirements.  Accordingly, AGPA's motion for leave to amend should be denied.

---

[1]     In its Reply Memorandum in Support of Motion to Set Aside Judgment, AGPA erroneously argues that the Court "foreclosed" it from the "full opportunity to amend its complaint" by entering judgment on July 13, 2006, thirteen days after defendants submitted a proposed judgment to the Court for its review (and eight days after defendants submitted a revised proposed judgment), both of which AGPA erroneously describes as "motions."  [Docket No. 99, at 2-3.]  AGPA misrepresents the record.  First, defendants' submission of a proposed judgment was not a "motion" governed by the time limits of the Local Rules.  Second, and more significantly, AGPA could have amended its complaint as a matter of right anytime prior to the entry of judgment, but it chose not to.  This Court did not, as AGPA's Reply contends [*id.*, at 1], enter judgment "without the opportunity to amend."  Rather, AGPA chose not to take the opportunities available to it.

ARGUMENT

I.   THIS COURT SHOULD DENY PLAINTIFF'S MOTION FOR LEAVE TO AMEND

   A.   LEAVE TO AMEND SHOULD BE DENIED WHEN AMENDMENTS WOULD BE FUTILE OR THE MOVANT HAS ENGAGED IN UNDUE DELAY

Following the entry of judgment, a party seeking leave to amend must first have the judgment vacated and then obtain leave of court to file the amended complaint. *Weeks v. Bayer*, 246 F.3d 1231, 1236 (9th Cir. 2001). While Rule 15(a) establishes that leave to amend should be freely given, post-judgment motions to amend are "treated with greater skepticism than pre-judgment motions." *Premo v. Martin*, 119 F.3d 764, 772 (9th Cir. 1997) (finding lower court committed no error in denying Rule 15 motion for leave to amend made after entry of final judgment because movant had "ample opportunity" to amend "before the court issued its final judgment"). Indeed, after entry of judgment, a movant's burden to demonstrate that it is entitled to leave to amend is heightened. *See* 3 Moore's Federal Practice ¶ 15.14[4] (3d ed. 1997) ("Rule 15 is essentially aimed at the prejudgment phase of litigation, when leave to amend is freely granted . . . . After final judgment [], amendments may be possible, but the pleader's burden increases."). Post-judgment amendments are granted "sparingly and only if justice requires." *Id.*

A court may properly deny a request to amend when the proposed amendments would be futile because they would not cure the deficiencies in the original complaint. *Jarvis v. Regan*, 833 F.2d 149, 155 (9th Cir. 1987) (holding district court committed no error in denying post-judgment amendment where amendment would be futile, as "proffered evidence added nothing to [movant's] claims"); *Acito v. IMCERA Group, Inc.,* 47 F.3d 47, 55 (2d Cir. 1995) (holding that the district court committed no error in denying a motion to vacate judgment to allow for amendment because "[o]ne good reason to deny leave to amend is when such leave would be

futile").[2] Where claims have been dismissed for lack of standing, amendments that fail to cure the standing defect should not be permitted. *Bell v. Kellogg*, 922 F.2d 1418, 1425 (9th Cir. 1991) (holding district court committed no error in finding amendment futile where plaintiffs' case was dismissed for lack of standing and no amendment could have cured this defect).

Leave to amend may also be denied when the moving party has engaged in undue delay in presenting its request for amendment. *Premo*, 119 F.3d at 772 ("The likelihood that amendment will cause undue delay in the proceedings is a legitimate rational for denying a motion to amend."). "After a judgment has been issued, the conclusion that amendment will cause undue delay is particularly justified." *Id. See also Twohy v. First Nat'l Bank of Chicago*, 758 F.2d 1185, 1196-97 (7th Cir. 1985) (holding district court committed no error in denying post-judgment amendment where movant waited until after entry of judgment to propose amendments and observing "[s]everal courts have [] denied post-judgment leave to amend solely on the basis of unreasonable or unexplained delay where plaintiff had earlier opportunities to present amendments"); *United States Labor Party v. Oremus*, 619 F.2d 683, 690 (7th Cir. 1980) ("Delay in presenting a post judgment amendment when the moving party had an opportunity to present the amendment earlier is a valid reason for a district court not to permit an amendment.").

B.   AGPA'S PROPOSED AMENDMENTS WOULD BE FUTILE

In determining whether an amendment is futile, the Ninth Circuit employs a two pronged approach. First, an amendment may be futile if the new pleading does nothing more then

---

[2]   *See also Albrecht v. Lund*, 845 F.2d 193, 195-96 (9th Cir. 1988) (holding district court committed no error in denying leave to amend where "defects would not be repaired by amending the complaint"); *Universal Mortg. Co. v. Prudential Ins. Co.*, 799 F.2d 458, 459 (9th Cir. 1986) ("[L]eave to amend [] may be denied if the proposed amendment either lacks merit or would not serve any purpose because to grant it would be futile in saving the plaintiff's suit.").

BPXA and BP p.l.c.'s Memo. in Opposition to AGPA's Motion for Leave to File Amended Complaint
*Alaska Gasline Port Authority v. ExxonMobil, et al.*, Case No. F05-0026 CIV (RRB)                                    3

"contradict[] . . . the allegations of [the] original complaint." *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990); *accord CFA N. Cal., Inc. v. CRT Partners LLP*, 378 F. Supp. 2d 1177, 1184 (N.D. Cal. 2005). This is because, in this Circuit, a defective factual allegation cannot be cured simply through contradictory pleading. *Id.* Second, even if the proposed facts to be added by the amendment are consistent with the original pleading, amending may be futile if those proposed new facts do not cure the deficiencies in the prior complaint. *Jarvis*, 833 F.2d at 155. In such a case, the amendment would simply serve no purpose. *Id.*

Here, comparing AGPA's original and proposed amended complaints reveals that the principal factual differences fall primarily into two general categories.[3] First, in the allegations in ¶¶ 90-91, AGPA attempts an abrupt about-face with regard to its claim to have complied with the Stranded Gas Development Act ("SGDA"). AGPA originally alleged that its application under the SGDA was pending and that negotiations with the Governor were underway at the time it filed its complaint in 2005. [Docket No. 1, at ¶ 96.] Now, in the proposed amended complaint, AGPA inconsistently alleges that it effectively abandoned its SGDA application in 2004 and chose to proceed without seeking fiscal benefits under the SGDA. [Docket No. 90-2, at ¶¶ 90-91.] AGPA's change of tack on the SGDA, however, neither cures the deficiencies of its claims, nor saves it from this Court's finding on the preemptive impact of the SGDA. Second, in the allegations at ¶¶ 92-114, AGPA attempts to bolster its complaint with additional allegations about

---

[3] AGPA's proposed amendments also purport to address the deficiencies in its claim arising under Section 7 of the Clayton Act ("Section 7"). *See* p. 10, note 7, *infra*. BPXA's discussion below of illustrative instances of AGPA's new allegations is not intended to address the substantive defects of AGPA's claims in a comprehensive manner. If AGPA's proposed amendment were permitted, BPXA and BP p.l.c. intend, and hereby reserve their rights, to further challenge the legal sufficiency of AGPA's amended complaint under Rule 12.

its purported preparedness to enter the market. These additions, however, do not establish the level of preparedness sufficient to meet the Ninth Circuit cases on which this Court relied in dismissing the original complaint. Because none of AGPA's proposed amendments would cure the deficiencies underlying the Court's ruling, they are futile and should, therefore, not be allowed.[4] *United States v. Articles of Food . . . Clover Club Potato Chips*, 67 F.R.D. 419, 424 (D. Idaho 1975) ("[T]he court is not required to engage in futile gestures by allowing amendments which are without legal basis or which would assert claims over which the Court does not have jurisdiction.").[5]

        1.     AGPA's About Face on the SGDA Does Not Cure the Defects the Court Found in Its Standing and Preemption Rulings

As the Court recognized, the State of Alaska, through the SGDA "create[d] a comprehensive and detailed process for negotiating and approving contractual agreements designed to make the development and commercialization of North Slope gas a reality." [Docket No. 84, at 2-3.] The Court ruled that the SGDA therefore precluded AGPA's attempt by litigation

---

[4] AGPA also fails (and does not even attempt) to address the other deficiencies identified in this Court's Order granting dismissal, including, for example that "Plaintiff's antitrust claims also fail because they do not satisfy the most basic element of any antitrust claim -- that the alleged wrongful conduct injured competition in an <u>existing and relevant economic market</u>." [Docket No. 84, at 8 n. 21 (emphasis in original).] These failures are yet other reasons why AGPA's proposed amendment would not change the Court's ruling on these motions to dismiss.

[5] AGPA argues that the "bar to establish futility is quite high," and cites to a number of cases that purportedly support that proposition. All of AGPA's cases, however, involve motions to amend made *prior* to the entry of judgment. [Docket 90-1, at 3.] In its discussion, AGPA fails to address even a single case involving a motion to amend made *after* the entry of judgment. Those cases, as defendants point out herein, make clear that post-judgment motions to amend are "treated with greater skepticism than pre-judgment motions." *Premo*, 119 F.3d 764 at 772. *See also*, *Jarvis*, 833 F.2d at 155 (denying post judgment leave to amend because the new evidence "added nothing" to the movant's claims). Indeed, the burden on a party seeking post-judgment amendment is heightened. 3 Moore's Federal Practice ¶ 15.14[4] (3d ed. 1997) ("After final judgment [], amendments may be possible, but the pleader's burden increases."). Regardless of where the bar is set, however, AGPA's amendments simply do not cure the fundamental defects of its claims and are, therefore, futile.

to preempt the outcome of the SGDA process. In an apparent attempt to avoid that ruling, AGPA's proposed amended complaint alleges that AGPA effectively abandoned its SGDA application as early as 2004, and that it intends "to proceed without seeking fiscal benefits under the SGDA." [Docket No. 90-2, at ¶¶ 90-91.] Because it is a "public entity," AGPA alleges, the "fiscal benefits" offered by the Act are not "necessary for . . . the Authority's project." [*Id.*] These new allegations regarding the SGDA represent an abrupt about face from its original complaint, filed in December 2005, which alleged that AGPA "filed an application" under the SGDA, and was "currently in negotiations with the Governor" concerning it. [Docket No. 1, at ¶ 96.] In moving to dismiss, defendants cited AGPA's failure to have its project accepted as a "qualified project" under the SGDA, and to successfully negotiate a fiscal contract with the Governor, as demonstrating its lack of adequate preparedness to establish antitrust standing. [*E.g.*, Docket No. 31-1, at 11-12 ("Unless and until plaintiff's project is selected by the State, plaintiff lacks a key foundational block for its project.").]

AGPA's reversal on the SGDA fails for several reasons. First, in amending its complaint, AGPA cannot cure the defects of its claims by simply deleting the offending allegations and adding new, contradictory allegations. *Reddy*, 912 F.2d at 296. Moreover, even if AGPA were allowed to flip-flop on it allegations, its amendments still do not save it from this Court's previous finding that this lawsuit "conflicts with the SGDA" and is therefore preempted. [Docket No. 84, at 12-13.] AGPA, regardless of whether it seeks to proceed under the SGDA or not, is still "[not] authorized to seek judicial relief that would interfere with Alaska's ability to develop North Slope

gas resources under the process contemplated by the [SGDA]." [*Id.* at 12.][6] Additionally, AGPA's concession that it terminated efforts to negotiate a fiscal contract with the State of Alaska under the SGDA further confirms AGPA's lack of preparedness and hence lack of standing.

        2.    AGPA's Amendments Regarding Preparedness Do Not Establish Standing Under the Controlling Ninth Circuit Authority

In dismissing AGPA's original complaint, this Court found that AGPA failed to meet the "preparedness" standard. [Docket No. 84, at 7-8.] In its amended complaint, AGPA claims to have alleged additional facts demonstrating preparedness. [Docket No. 90-1, at 4.] Rather than demonstrating preparedness, AGPA's proposed new allegations instead bolster and solidify this Court's previous finding that AGPA has not and cannot demonstrate the four preparedness factors required under the antitrust laws.

        *(a)*    *The Proposed Amendments Fail to Demonstrate That AGPA Has Secured Necessary Funding*

AGPA's complaint portrayed the federal loan guarantees created by the Alaska Natural Gas Pipeline Act of 2004 as "giv[ing] the Authority . . . the ability to obtain financing" for its project. [Docket No. 1, at ¶ 81.] Defendants responded by pointing out that, to qualify for such

---

[6] AGPA now also states that because "the prayer for relief has been clarified to avoid any potential conflict between the relief the Port Authority seeks and the purpose of the SGDA," the lawsuit is "not preempted by the Act." [Docket No. 90-1, at 4.] But, AGPA continues to request injunctive relief, as it did in its original complaint. As this Court has held, "the order which Plaintiff seeks 'would [likely] upend the [SGDA] process, which presumes that Alaska officials will be able to evaluate the economics of competing pipeline projects by comparing costs and contractual commitments.'" [Docket No. 84, at 12-13.] The conflict with the SGDA is stark. The injunction that AGPA seeks, which requires the defendants to sell it North Slope natural gas, would interfere with the State's ability to negotiate stranded gas development agreements with the producers and other potential project sponsors and would erode the economics of any project approved under the SGDA process. Thus, AGPA has not done anything in the proposed amended complaint that would affect or change this Court's previous determination regarding the preemptive scope of the SGDA.

guarantees, AGPA must (1) be selected by the Federal Energy Regulatory Commission ("FERC") as the "one qualified project" to construct a North Slope pipeline, (2) obtain either a "certificate of public convenience and necessity" for its project from FERC or a determination that it is a "qualified entity" from the Secretary of Energy, and (3) obtain a loan commitment from an "eligible lender," and that AGPA had succeeded in satisfying none of these conditions. [Docket No. 31, at 13-14.] Defendants also pointed out that federal loan guarantees could at most cover 80% of the total project cost, still leaving at least $4-5 billion unfunded. [*Id.* at 14.] In dismissing AGPA's lawsuit, the Court concluded that AGPA's "ability to finance . . . its proposed pipeline is speculative at best." [Docket No. 84, at 8.]

AGPA's proposed amendments address only the last of these points, *i.e.,* its ability to finance project costs not covered by federal guarantees. In itself, AGPA's failure to address its project's multiple failures to qualify for the federal loan guarantees on which it relies to finance the vast majority of project costs is dispositive as to its lack of preparedness. *Gas Utils. Co. of Ala.*, 996 F.2d at 283 (plaintiff not prepared to enter new geographic market when it had not yet "*secure[d]* financing") (emphasis in original). As to the remaining project costs, AGPA offers additional allegations regarding possible investments by Sempra Energy in its project. [Docket No. 90-2, at ¶¶ 96, 110.] However, these allegations are irrelevant to AGPA's present ability to finance its project, because Sempra "withdrew" from the project in 2005. [*See* Docket No. 1, at ¶ 104; Docket No. 90-2, at ¶ 118.] Moreover, AGPA's newly-proffered allegation that Sempra "desired" to invest as much as $4-5 billion in its project is qualified by an admission that Sempra's willingness to commit financing was conditioned on resolving the project's "ultimate configuration," and that, to firm up Sempra's commitment, numerous "further agreements" of a

fundamental nature still needed to be reached. [Docket No. 90-2, at ¶¶ 96, 110 ("further agreements" included "Gas Sale and Purchase Agreement," "LPG Sale and Purchase Agreement" and "Participation and Option Agreement").] Because the "mere possibility of financing being available" is insufficient to establish a plaintiff's preparedness, these allegations count for little in overcoming AGPA's lack of antitrust standing. *Jayco Sys., Inc.,* 777 F.2d at 315.

    (b) *The Proposed Amendments Fail to Demonstrate That AGPA Consummated Necessary Contracts or Took Other Affirmative Steps Towards Preparedness*

AGPA's preparedness must be analyzed in the context of the vast scope of its proposed project, and the multiple and disparate operations and lines of business that it is seeking to enter, including the design, construction and operation of a 700 mile arctic pipeline and a massive "liquefaction/fractionation, storage and loading plant in Valdez," acquiring and operating a fleet of Jones Act tankers, and marketing over a period of decades billions of cubic feet per day of natural gas in the highly competitive West Coast markets. [Docket No. 1, at ¶ 83.] AGPA's proposed amended complaint offers a few additional allegations regarding its dealings with third parties on whom it hopes to rely to proceed with its project. [*E.g.*, Docket No. 90-2, at ¶¶ 94-100, 102-106.] In virtually all cases, these allegations confirm the merely "exploratory" or "preliminary" nature of AGPA's dealings with these parties. For example, AGPA provides additional details of a Memorandum of Understanding with Totem Ocean Trailer Express, a marine shipping company. However, while AGPA's complaint had portrayed this MOU as covering "the shipment of LNG from Alaska to the Pacific Coast" [Docket No. 1, at ¶ 85], AGPA now concedes that it is limited to "a consulting arrangement" under which Totem Ocean provides "advice and consultation" on "the construction or acquisition of tankers, vessel management, crewing, tug escort systems, and/or logistical management responsibility." [Docket No. 90-2, at ¶

99.] Similarly, AGPA alleges a newly-entered MOU with Mitsui O.S.K. Lines, but this MOU is limited to "a joint study" of the "best structure for LNG/LPG transportation." [Docket No. 90-2, at ¶ 100.] AGPA also provides further details regarding a MOU with "Kitimat LNG," but in doing so reveals that this entity only recently received regulatory approval for its proposed LNG terminal, and has not begun construction. [Docket No. 90-2, at ¶ 98.] And, while describing in greater detail the decades-old permits and rights-of-way covered by an option granted by Yukon Pacific Corporation, AGPA concedes that this option remains unexercised. [Docket No. 90-2, at ¶ 103.]

Even more than its original complaint, AGPA's proposed amended complaint leans heavily on its conclusion that it has accomplished all "that could be done at this stage." [Docket No. 90-2, at ¶ 92.] As before, the specific facts alleged in its pleading rebut this claim. As demonstrated above, AGPA's amended allegations still fail to demonstrate that AGPA has taken the most basic preparatory steps towards securing funding, consummating binding contracts or developing experience and expertise in the industry.[7]

### C. AGPA ENGAGED IN UNDUE DELAY IN REQUESTING LEAVE TO AMEND

To determine whether a movant has engaged in "undue delay" in requesting leave to amend, the Ninth Circuit looks to a variety of factors, including: (1) whether the movant knew at

---

[7] AGPA's s failure to demonstrate preparedness dooms *all* of its antitrust claims, including its claim arising under Section 7. Thus, AGPA's attempt to revive its Section 7 claim, by adding allegations that appear to have been included for the purpose of saving the claim from the Court's holding that it is time-barred, fails. [*See* Docket No. 90-2, at ¶¶ 165, 170.] AGPA's Section 7 amendments are also futile because AGPA has not alleged additional facts demonstrating that the new acquisitions had a material effect on the defendants' market share. Nor has AGPA added any allegations identifying the market(s), if any, affected by such acquisitions. Moreover, AGPA's proposed amended complaint does not even attempt to address the two other independent bases for the Court's dismissal of the Section 7 claim: (1) AGPA's failure to allege that the challenged transactions were illegal; and (2) AGPA's failure to allege that the challenged transactions had any effect on the defendants' alleged refusal to sell North Slope gas to AGPA. [Docket No. 84, at 9.]

the time of the drafting of the original pleading the facts to be added by the amendment; (2) the length of time the plaintiff waited to request leave to amend; and (3) whether the plaintiff adequately explained the reasons for his or her delay.  *See, e.g.*, *Premo*, 119 F.3d at 772; *Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 908, 986 (9th Cir. 1999).

In this case, AGPA's delay in waiting until after entry of judgment to request its amendment is undue under all of the above-listed factors.  First, as discussed thoroughly in defendants' oppositions to AGPA's motion to vacate judgment, AGPA's amended complaint alleges no newly discovered material facts. [Docket No. 95-1, at 6-7.]  AGPA simply asserts that it has pled "additional facts" that "cure [] any deficiencies found in the prior Complaint." [Docket No. 90-1, at 4-5.]  It does not identify those facts or demonstrate that they were not available at any time before the final judgment was entered.  Moreover, it does not explain why those facts are material or how they cure the many deficiencies in the prior complaint.  Second, AGPA enjoyed numerous opportunities to amend its complaint, but elected not to amend at each available opportunity.  Had AGPA chosen to amend prior to judgment, it would have enjoyed that right as a matter of course, without requiring leave of court. Fed. R. Civ. P. 15(a).  AGPA instead waited until 14 days after entry of judgment to request, for the very first time, that it be granted leave to amend its complaint.  Third, AGPA does not provide a reason for this delay, or an explanation as to why it did not attempt to file an amended complaint before judgment was entered.

## CONCLUSION

AGPA's proposed amendments fail to cure any of the fundamental deficiencies that led to the dismissal of the original complaint.  Furthermore, AGPA has engaged in undue and unjustifiable delay by waiting until after the entry of final judgment to make its first request for

leave to amend. Accordingly, AGPA's Rule 15(a) motion for leave to file an amended complaint should be denied.

        ARNOLD & PORTER LLP
        Ronald C. Redcay
        Matthew T. Heartney
        Angel L. Tang

        BP EXPLORATION (ALASKA) INC.
        Bradley S. McKim

        *Attorneys for Defendant*
        *BP Exploration (Alaska) Inc.*

        KIRKLAND & ELLIS LLP
        J. Andrew Langan
        David J. Zott
        Benjamin W. Hulse

        KIRKLAND & ELLIS LLP
        G. Seth Beal

        *Attorneys for Defendant BP p.l.c.*

        FELDMAN ORLANSKY & SANDERS
        Jeffrey M. Feldman

        *Attorneys for Defendants*
        *BP Exploration (Alaska) Inc. and*
        *BP p.l.c.*

Dated: August 21, 2006

        By: _____
            Jeffrey M. Feldman
            Alaska Bar No. 7905029

407612.6

        *Attorneys for Defendants*
        *BP Exploration (Alaska) Inc. and*
        *BP p.l.c.*

CERTIFICATE OF SERVICE
I hereby certify that on the 21st day of August, 2006, copies of BPXA and BP p.l.c.'s Memorandum in Opposition to AGPA's Motion For Leave To File Amended Complaint and [Proposed] Order Denying Motion For Leave To File Amended Complaint were served electronically on:   K. Berry, D. Beck, D. Boies, C. Cole, J. Cove Jr, D. Craven, P. Hewitt, E. Nichols, K. Rossman IV, W. Rozell, D. Serdahley, R. Silver, C. Spillman, J. Tuite, W. Walker, L. White,  and M. Whitley.

s/ Jeffrey M. Feldman