Donald B. Craven (DC Bar No. 221424)
**AKIN GUMP STRAUSS
HAUER & FELD LLP**
1333 New Hampshire Avenue, N.W.
Washington, DC  20036
(202) 887-4000; (202) 887-4288 (fax)
dcraven@akingump.com

David J. Beck (Federal Bar No. 919)
**BECK, REDDEN & SECREST**
1221 McKinney Street, Suite 4500
Houston, TX  77010
(713) 951-3700; (713) 951-3720 (fax)
dbeck@brsfirm.com

William B. Rozell (Alaska Bar No. 7210067)
623 Basin Road
P.O. Box 20730
Juneau, AK  99802
(907) 586-0142; (907) 463-5647 (fax)
bartrozell@aol.com

Douglas J. Serdahely (Alaska Bar No. 7210072)
**PATTON BOGGS LLP**
601 West 5th Avenue, Suite 700
Anchorage, AK  99501
(907) 263-6310; (907) 263-6345 (fax)
dserdahely@pattonboggs.com

*Attorneys for Defendant Exxon Mobil Corporation and
ExxonMobil Alaska Production, Inc.*

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| THE ALASKA GASLINE PORT AUTHORITY,<br><br>Plaintiff,<br><br>vs.<br><br>EXXON MOBIL CORPORATION, a New Jersey corporation; EXXONMOBIL ALASKA PRODUCTION, INC. a Delaware corporation; BP P.L.C. a United Kingdom corporation; and BP EXPLORATION (ALASKA) INC., a Delaware corporation,<br><br>Defendants. | Case No. 4:05-cv-00026-RRB<br><br>**OPPOSITION OF DEFENDANTS EXXON MOBIL CORPORATION AND EXXONMOBIL ALASKA PRODUCTION, INC. TO PLAINTIFF'S MOTION FOR LEAVE TO FILE AMENDED COMPLAINT** |

### INTRODUCTION

After the Court entered final judgment dismissing this action, Plaintiff Alaska Gasline Port Authority (the "Port Authority") filed motions asking the Court to set aside its judgment and seeking leave to file an amended complaint. (Docket Nos. 89, 92). Defendants Exxon Mobil

50412v3

Corporation and ExxonMobil Alaska Production, Inc. (collectively "ExxonMobil") previously filed a response to the Port Authority's motion to set aside the judgment. *See* Opp'n of Defs. Exxon Mobil Corporation and ExxonMobil Alaska Production, Inc. to Pl.'s Mot. to Set Aside J. (Docket No. 94). In that opposition, ExxonMobil demonstrated that the Port Authority has failed to satisfy Federal Rule of Civil Procedure 59(e)'s stringent standards for vacating a final judgment and that the Court therefore lacks jurisdiction to consider the separate motion for leave to amend under Federal Rule of Civil Procedure 15(a).[1]

In the present pleading, ExxonMobil responds to the Port Authority's separate motion for leave to file an amended complaint. ExxonMobil here shows that, even if the Port Authority were able to clear Rule 59(e)'s high hurdle, its effort to resuscitate this action still would fall short. The proposed amendments do not cure the defects that required dismissal of the original complaint.

## BACKGROUND

When this Court dismissed the action, it identified a number of deficiencies in the Port Authority's original complaint, *See* Order Granting Defs.' Mots. to Dismiss ("Order") (Docket No. 84). Three of the most prominent of those defects are relevant to the Port Authority's motion for leave to amend. The first involved the Port Authority's inherent inability, as a political subdivision of the State, to take any action that would frustrate Alaska's laws and policies. *Id.* at 3. The Court found that the Port Authority's lawsuit was "inconsistent with the

---

[1] On August 18, the Port Authority filed a reply memorandum in support of its Motion to Set Aside Judgment. Reply in Supp. of Mot. to Set Aside J. (Docket No. 99). In its reply, the Port Authority argues for the first time that the Court committed error when it entered final judgment in this case. *Id.* at 2-3. ExxonMobil intends to seek leave to file a brief surreply memorandum in order to respond to the Port Authority's new contention.

purpose(s)" of the Alaska Stranded Gas Development Act ("SGDA"), which expressly preempts conflicting municipal action. *Id.* at 12-13.

The second deficiency involved the Port Authority's failure to plead facts sufficient to satisfy the preparedness requirement of antitrust standing. Based on the complaint's allegations, the Court determined that the Port Authority's "ability to finance the construction of its proposed pipeline is speculative at best." *Id.* at 7-8 (citing *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 11. F.3d 1460, 1465 (9th Cir. 1993)).

The third deficiency involved the portions of the complaint challenging the legality of certain mergers under Section 7 of the Clayton Act. The Court ruled that those claims were time-barred and inadequately pled. *See id.* at 9 (dismissing Clayton Act claim). The Port Authority now seeks to file an amended complaint that purports to remedy these deficiencies. Am. Compl. (Docket No. 90-2). But the Port Authority has failed to explain with any specificity how its proposed amendments would address the problems identified by the Court. The Port Authority has not submitted a red-lined version identifying the changes it proposes to make in its 60-page complaint. Nor has it described the proposed amendments in any detail in its motion or supporting memorandum. Nevertheless, ExxonMobil's review of the proposed amended complaint indicates that the relevant amendments fall into three general categories corresponding to the three deficiencies described above: (1) the Court's preemption ruling under the SGDA (Am. Compl. ¶¶ 90-91); (2) the Court's lack-of-preparedness determination (Am. Compl. ¶¶ 94-114); and (3) the Court's statute-of-limitations ruling under Section 7 of the Clayton Act (Am. Compl. ¶¶ 165, 170).[2]

---

[2] The Port Authority also seeks to make various other amendments that do not relate to the

# ARGUMENT

Although leave to amend "shall be freely given when justice so requires," Fed. R. Civ. Proc. 15(a), "denial of leave to amend is appropriate if the amendment would be futile." *California v. Neville Chem. Co.*, 358 F.3d 661, 673 (9th Cir. 2004). A proposed amendment is futile if it would not "affect the outcome of th[e] lawsuit." *Klamath-Lake Pharm. Assoc. v. Klamath Med. Serv. Bureau*, 701 F.2d 1276, 1293 (9th Cir. 1983). Under this standard, the Court should deny the Port Authority's motion for leave to amend because the proposed amendments do not cure the defects that required dismissal of the original complaint. *See Hanlon v. Hartford Life & Acc. Ins. Co.*, No. 02-35698, 2003 U.S. App. LEXIS 24087, at *3-4 (9th Cir. Nov. 25, 2003) (attached as Exhibit 1) (leave to amend properly denied where statute would continue to preempt amended complaint); *Bell v. Kellogg*, 922 F.2d 1418, 1425 (9th Cir. 1991) (leave to amend properly denied where proposed amendments would not establish plaintiff's standing to sue).

## A.   THE PROPOSED AMENDMENTS DO NOT CURE THE CONFLICT BETWEEN THIS LAWSUIT AND THE STRANDED GAS DEVELOPMENT ACT

In dismissing the original complaint, this Court concluded that the Port Authority, as a creature of state law, was prohibited from interfering with the State's preferred means for bringing North Slope natural gas to market and that the SGDA "expressly preempt[ed] Plaintiff's conflicting municipal action." Order at 3, 13-14. The Port Authority now attempts to avoid this holding by (1) revising certain factual allegations to suggest that it need not proceed, and does not intend to seek fiscal benefits, under the SGDA and (2) adding language to its prayer for

---

grounds on which the Court dismissed the complaint.

relief. The proposed amendments are futile and should be rejected.[3]

The revised factual allegations address an imaginary issue having no bearing on the dismissal decision. The Port Authority's participation or non-participation in the SGDA process is not the question. Rather, what triggers SGDA preemption is the Port Authority's effort to interfere with the SGDA process through this litigation. The Port Authority seeks an injunction requiring the Defendants to sell it North Slope natural gas. Such an injunction inherently would interfere with the State's ability to negotiate stranded gas development agreements with the producers and other potential project sponsors and would undermine the economics of any project approved under the SGDA process.

The Port Authority fails to appreciate that the SGDA conflict barring this lawsuit stems not from a defect in the pleading, but rather from a defect in the Plaintiff. Although a private plaintiff might be unaffected by the SGDA, the Port Authority, as a political subdivision of the State, lacks the power to take *any* action that frustrates the laws and policies of Alaska, including seeking judicial relief that interferes with the State's efforts to commercialize North Slope gas. This conclusion is rooted not only in the express preemption clause of the SGDA, but also in the mandatory and unqualified language of Article VIII of the Alaska Constitution, which expressly assigns responsibility for managing Alaska's natural resources to the State itself. *See* Alaska Const. art. VIII, §§ 2, 12; *Macauley v. Hildebrand*, 491 P.2d 120, 122 (Alaska 1971) (state law preempted borough's attempt to impose accounting procedures on school district where the

---

[3] The proposed amendments are as familiar as they are futile. The Port Authority presented the same contentions in its opposition to the Defendants' motions to dismiss. Consolidated Opp'n of Alaska Gasline Port Authority to Defs. Mots. to Dismiss ("Consolidated Opp'n") at 59 (Docket No. 55) ("The Port Authority's pipeline project is economically viable without concessions under the SGDA, and there is no requirement that a pipeline sponsor seek such concessions."). The Court already has considered these arguments and found them unpersuasive.

"constitutional mandate for pervasive state authority in the field of education" was expressed in mandatory terms and did not assign concurrent responsibility to municipalities).

In dismissing this action, the Court correctly ruled that important decisions affecting the "monumental task" of constructing a North Slope natural gas pipeline "should involve all interested parties and are best made by the Alaska State Legislature and the people of Alaska." Order at 2.  The proposed amended complaint, no less than the original, seeks to substitute municipal prerogatives for state policies and to resolve by federal-court fiat what the State of Alaska has chosen to accomplish through the SGDA process.  Because the Port Authority's proposed SGDA allegations fail to remedy the conflict that required dismissal of the original complaint, they must be rejected.  *Cf. Hanlon*, 2003 U.S. App. LEXIS 24087, at *3-4 (leave to amend denied where proposed amendments would continue to be preempted by statute).

The proposed amendment to the prayer for relief likewise cannot support a change in the Court's earlier analysis.  The proposed language would insert an uncontroversial recitation of one of the essential legal prerequisites for any award of injunctive relief—namely, that the injunction be awarded only if it is in the public interest. Am. Compl. Part VIII.C; *see also eBay Inc. v. MercExchange, LLC*, 126 S.Ct. 1837, 1839 (2006) (under "well-established principles of equity," a plaintiff seeking a permanent injunction must prove that the "public interest would not be disserved").  Thus, the proposed amendment merely would add words already implicit in the original prayer for relief, contributing nothing of substance to the complaint.

Moreover, the Port Authority has neither withdrawn its request for injunctive relief nor retreated from the judicially noticeable statements that its litigation counsel, David Boies, made before the U.S. Senate Committee on the Judiciary earlier this year.  As ExxonMobil noted in its

reply memorandum in support of its motion to dismiss, Mr. Boies's sworn statements made it perfectly clear that the Port Authority "seek[s] a mandatory injunction that would tell" the Defendants "to sell the[ir] gas" to it.  *Hearing Before the S. Comm. on the Judiciary*, 109th Cong., Federal News Service at 22 (2006) (transcript attached as Ex. A to Reply Mem. in Supp. of Mot. to Dismiss of Defs. Exxon Mobil Corporation and ExxonMobil Alaska Production, Inc. ("Reply Mem.") (Docket No. 63)).  ExxonMobil argued, and this Court found, that any such award would upend the process created by the SGDA and that the Port Authority lacked power to interfere with the policies of its parent state in this way.  Order at 12-13.

In sum, the Port Authority's supposedly curative proposed amendments do nothing to eliminate the conflict that required dismissal.

**B.    THE AMENDED COMPLAINT DOES NOT REMEDY THE SPECULATIVE NATURE OF THE PORT AUTHORITY'S PROJECT**

The Court dismissed the original complaint in part because the Port Authority's "ability to finance the construction of its proposed pipeline is speculative at best."  Order at 8.  Although the amended complaint adds detail to the allegations about the Port Authority's project, these details do not show that the Port Authority's ability to raise the tens of billions of dollars needed to finance its project is any less speculative now than it was before.  The crucial problem is this: The proposed amended complaint continues to acknowledge that the Port Authority's ability to finance up to 80 percent of the $20-billion-plus cost of its project is critically dependent on its ability to access federal loan guarantees, yet also continues to concede that the guarantees could "potentially" be awarded to "other competitors."  Am. Compl. ¶¶ 108-109.

As ExxonMobil explained at the motion to dismiss stage, the Port Authority's dependence on the loan guarantees to finance entry is fatal to its assertion of preparedness.  *See*

Mem. of Law in Supp. of Mot. to Dismiss of Defendants Exxon Mobil Corporation and ExxonMobil Alaska Production, Inc. ("XOM Mem.") at 18-26 (Docket No. 34); Reply Mem. at 11-14.  While the Port Authority may continue to insist that it "qualif[ies]" for the loan guarantees, it cannot plead facts sufficient to show that it will be the one project sponsor that actually obtains the guarantees.  XOM Mem. at 18-21.  The Port Authority cannot "plead away" the inherent complexity and uncertainty of the federal loan guarantee application and award process, and it even fails to note that the Department of Energy has not yet adopted implementing regulations establishing the procedures and standards for assessing a potential project sponsor's qualifications.  XOM Mem. at 21-22 & n.13; Reply Mem. at 12.

In dismissing the original complaint, the Court joined other federal courts that have found market entry to be inherently speculative where it depends on a complex, highly uncertain government approval process.  *See City of Pittsburgh v. West Penn Power Co.*, 147 F.3d 256, 258-60 (3d Cir. 1998) (power producer had not received public utility commission approval to enter market).  *See generally* XOM Mem. at 22-26; Reply Mem. at 11-14.  Here, the proposed amendments are futile because they do not, and cannot, dispel the high degree of uncertainty surrounding the loan guarantee process that required dismissal of the original complaint.[4] Moreover, virtually all of the Port Authority's "new" preparedness allegations merely add details to facts alleged in the original complaint—facts that this Court found insufficient to confer antitrust standing.  Order at 7-8.  In particular, the Port Authority seeks to plead additional details

---

[4] The Port Authority's naked assertion that it is "highly probable" that it will obtain financing does not affect the analysis.  The Port Authority previously contended that it "will readily obtain financing in the capital markets."  Consolidated Opp'n at 23.  If anything, the proposed amendments suggest that the Port Authority's ability to obtain financing is more speculative than before.

about agreements that it allegedly has reached with other companies, steps that it allegedly has taken to acquire necessary permits and project cost estimates, and ways in which it supposedly will be able to finance its project. *Compare* Am. Compl. ¶¶ 84-114 *with* Compl. ¶¶ 81-105 (Docket No. 1).

The Port Authority's effort to create the appearance of preparedness by adding detail to facts already alleged is misdirected. *See Kasey v. Molybdenum Corp. of Am.*, 467 F.2d 1284, 1285 (9th Cir. 1972) ("[A]mendments should not be allowed merely to permit a restatement of the same facts in different language or the reassertion of a claim previously determined."). The Defendants did not contend, and this Court did not hold, that the original complaint failed to meet a heightened pleading standard or that the Port Authority had failed to plead preparedness with sufficient particularity.[5] To the contrary, this Court expressly construed the original complaint in the light most favorable to the Port Authority and presumed all of its factual allegations to be true. Order at 5 (quoting *Fed'n of African Am. Contractors v. City of Oakland*, 96 F.3d 1204, 1207 (9th Cir. 1996). Even under this permissive standard, the Court concluded that the Port Authority's preparedness to enter the market as the Defendants' competitor was too speculative to confer antitrust standing. Nothing in the proposed amendments remedies this deficiency.

---

[5] The Port Authority's heavy reliance on *Eminence Capital, LLC v. Aspeon, Inc.* is misplaced for the same reason. *Eminence Capital* was a securities case in which the plaintiff was required to meet the stringent pleading standards of the Private Securities Litigation Reform Act. *See* 316 F.3d 1048, 1052-53 (9th Cir. 2003). As the Ninth Circuit noted, leave to amend should be freely granted in such cases because the securities plaintiff does not "operat[e] in the world of notice pleadings" but rather in a world where "the drafting of a cognizable complaint can be a matter of trial and error." *Id.* By contrast, this case, as the Port Authority urged in opposing the motions to dismiss, falls squarely "in the world of notice pleadings." *See* Consolidated Opp'n at 13 ("Antitrust claims are subject to the same Rule 8 notice pleading standard as other federal claims.").

The Port Authority proposes only one amendment that may not appropriately be characterized as adding detail to a previously alleged fact. In proposed paragraph 111, the Port Authority alleges that it is authorized to issue bonds in order to fund its project. Am. Compl. ¶ 111. As the Port Authority acknowledges, however, this allegation derives from state statutes and municipal ordinances that were cited by the parties and subject to judicial notice at the time the Court dismissed the original complaint. Compl. ¶ 34; XOM Mem. at 44 n.29; *see also Santa Monica Food Not Bombs v. City of Santa Monica*, 450 F.3d 1022, 1025 n.2 (9th Cir. 2006) (judicial notice taken of municipal ordinance). There is nothing "new" in the Port Authority's recitation of an element of these public enactments that adds to the record or supports amendment of the complaint. More important, the Port Authority does not allege that its ability to issue bonds will enable it to finance its project without also relying on the federal loan guarantees. It therefore would be futile to permit the Port Authority to amend its complaint to add this allegation.

C. **THE PROPOSED AMENDMENTS FAIL TO CURE THE DEFECTS REQUIRING DISMISSAL OF THE PORT AUTHORITY'S ORIGINAL CLAIMS UNDER SECTION 7 OF THE CLAYTON ACT**

The Port Authority seeks to add allegations that ExxonMobil "acquired new interests in a number of [oil and gas] leases" since "late 2001" and that the Defendants "have acquired new oil and gas leases." Am. Compl. ¶¶ 165, 170. Presumably, the purpose of these amendments is to attempt to escape from the Court's holding that the Port Authority's claims under Section 7 of the Clayton Act are time-barred. Order at 9.[6]

---

[6] The proposed amendments do not address two other independent bases for this Court's dismissal of the Clayton Act claim—namely, the Port Authority's failure to allege that the challenged transactions were illegal or that they had any effect on the Defendants' alleged refusal

As an initial matter, the Court should reject the proposed amendments because the Port Authority lacks standing to sue under Section 7 of the Clayton Act, just as it lacks standing to sue under other sections of the federal antitrust laws, because it cannot allege facts sufficient to show that it is prepared to enter the market. In addition, the proposed amendments fail to include allegations that the lease acquisitions occurring within the limitations period had a material effect on ExxonMobil's market share. *See United States v. Oracle Corp.*, 331 F. Supp. 2d 1098, 1110 (N.D. Cal. 2004) (To "establish a prima facie case of a section 7 violation," a plaintiff must show that defendant's action "would produce 'a firm controlling an undue percentage share of the relevant market and [would] result . . . in a significant increase in the concentration of firms in that market.'" (quoting *FTC v. H J Heinz Co.*, 246 F. 3d 708, 715 (D.C. Cir. 2001), and *United States v. Phil. Nat'l Bank*, 374 U.S. 321, 363 (1963)). Indeed, the Port Authority does not even attempt to identify the market(s), if any, affected by such acquisitions. *Contra United States v. Marine Bancorp*, 418 U.S. 602, 618 (1974) ("Determination of the relevant product and geographic markets is 'a necessary predicate'" to a section 7 claim. (quoting *United States v. E.I. duPont de Nemours & Co.*, 353 U.S. 586, 593 (1957)). In the absence of some attempt to plead the effect of the alleged acquisitions on ExxonMobil's share of a relevant market, the amended complaint remains subject to dismissal for the same reasons as the original complaint.

## CONCLUSION

The Port Authority's Motion for Leave to File Amended Complaint should be denied.

---

to sell the Port Authority North Slope natural gas. Order at 9. The proposed Clayton Act amendments should be rejected on futility grounds for this reason alone.

DATED at Anchorage, Alaska this 21st day of August 2006.

   s/Douglas J. Serdahely
Douglas J. Serdahely
PATTON BOGGS LLP
601 West Fifth Avenue, Suite 700
Anchorage, Alaska  99501
Phone: (907) 263-6310
Fax:  (907) 263-6345
Email:  dserdahely@pattonboggs.com
Alaska Bar No. 7210072

**CERTIFICATE OF SERVICE**

I hereby certify that on the 21st day of August 2006, a copy of the foregoing document was served electronically on:

**Kevin Barry**
kbarry@bsfllp.com
skalas@bsfllp.com

**John F. Cove, Jr.**
jcove@bsfllp.com

**Kenneth F. Rossman, IV**
krossman@bsfllp.com
sphan@bsfllp.com

**Jeffrey M. Feldman**
feldman@frozenlaw.com
carper@frozenlaw.com
anderson@frozenlaw.com

**William M. Walker**
bill-wwa@ak.net
shelley-wwa@ak.net
karen-wwa@ak.net

**David Boies**
dboies@bsfllp.com

**Ronald C. Redcay**
ronald_redcay@aporter.com

**Robert Silver**
rsilver@bsfllp.com

**Angel L. Tang**
angel_tang@aporter.com

**Charles E. Cole**
colelaw@att.net

**Matthew T. Heartney**
matthew_heartney@aporter.com

**Bradley S. McKim**
bradley.mckim@bp.com

By:     s/Maribel Webber
       Legal Secretary/Assistant