David Boies
Robert Silver
**BOIES, SCHILLER & FLEXNER LLP**
333 Main Street, Armonk, NY 10504
914.749.8200; 914.749.8300 (fax)
dboies@bsfllp.com; rsilver@bsfllp.com

John F. Cove, Jr.
Kenneth F. Rossman IV
**BOIES, SCHILLER & FLEXNER LLP**
1999 Harrison St., Suite 900, Oakland, CA 94612
510.874.1000; 510.874.1460 (fax)
jcove@bsfllp.com; krossman@bsfllp.com

| | |
|---|---|
| William M. Walker (SBN 8310155) | Charles E. Cole (SBN 5503004) |
| **WALKER & LEVESQUE, LLC** | **LAW OFFICES OF CHARLES E. COLE** |
| 731 N Street, Anchorage, AK 99501 | 406 Cushman Street, Fairbanks, AK 99701 |
| 907.278.7000; 907.278.7001 (fax) | 907.452.1124; 907.456.2523 (fax) |
| bill-wwa@ak.net | colelaw@att.net |

*Counsel for Plaintiff Alaska Gasline Port Authority*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| THE ALASKA GASLINE PORT AUTHORITY, )<br>)<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>EXXONMOBIL CORPORATION, a New )<br>Jersey corporation; EXXONMOBIL ALASKA )<br>PRODUCTION, INC., a Delaware corporation; )<br>BP P.L.C., a United Kingdom corporation; and )<br>BP EXPLORATION (ALASKA) INC., a )<br>Delaware corporation, )<br>)<br>Defendants. )<br>) | CASE NO.: 4:05-cv-00026-RRB<br><br>**REPLY IN SUPPORT OF MOTION FOR LEAVE TO FILE AMENDED COMPLAINT** |

## INTRODUCTION

In granting the Defendants' motions to dismiss the Port Authority's complaint, the Court based its decision on three principal conclusions: (1) the request sought by the Port Authority is preempted by the Stranded Gas Development Act (the "SGDA," "Stranded Gas Act," or "Act"); (2) the complaint failed to allege sufficient facts demonstrating preparedness on the part of the Port Authority to enter the relevant markets for sale and transport of North Slope natural gas; and (3) the complaint failed to show that the mergers and acquisitions alleged to be in violation of Section 7 were illegal – and claims based on them were time-barred. *See generally* June 19, 2006 Order Granting Defendants' Motions to Dismiss [Docket No. 84] ("June 19 Order"). The Port Authority has supplemented that complaint to address these concerns, as demonstrated in the [Proposed] Amended Complaint submitted with the motion for leave to amend. *See* Docket No. 92-1 ("Amended Complaint"). For this reason, the Motion for Leave to File an Amended Complaint should be granted.

## BACKGROUND

On December 19, 2005, Plaintiff Alaska Gasline Port Authority filed a complaint against Defendants ExxonMobil Corp., ExxonMobil Alaska Production, Inc. (collectively "ExxonMobil"), BP p.l.c., and BP Exploration (Alaska) Inc. (collectively "BP"). All Defendants moved to dismiss, and on June 19, 2006, the Court granted their motions and dismissed the complaint. On June 30, 2006, Defendants jointly filed a Notice of Filing Proposed Final Judgment and on July 5, 2006, filed a Notice of Filing Corrected (Proposed) Final Judgment. On July 13, 2007, the Court entered final judgment. On July 27, 2006, the Port Authority timely filed a motion to set aside the judgment, together with the present motion for leave to amend. Both motions are currently pending before the Court.

In opposing the Port Authority's motion for leave to amend, Defendants argue that leave to file an amended complaint should be denied on the basis of futility, because the Port Authority cannot overcome the bar of preemption by the SGDA; that the Amended Complaint fails to cure the deficiencies identified in the June 19 Order; and that the Port Authority engaged in "undue delay" in seeking leave to amend. These arguments all miss the mark. The Stranded Gas Act plays no role in determining which pipeline project among competing proposals should go forward; the Amended Complaint makes sufficient allegations of preparedness and adequately alleges a Section 7 claim; and there is no question of undue delay in the request for leave to amend.

## ARGUMENT

**1.    The Amended Complaint makes clear that the Stranded Gas Development Act does not preempt this action or the Port Authority's claim for relief.**

  A.    <u>The SGDA establishes a process to seek tax and royalty concessions from the State; it does not preclude multiple pipeline proposals or create a means of choosing which proposal will move forward</u>.

The Amended Complaint explains that the SGDA does not preclude the Port Authority's requests for relief through preemption. The Alaska Legislature enacted the SGDA to create a process for pipeline backers to petition the State for fiscal incentives to build a gas pipeline, such as special tax and royalty rates. Amended Complaint ¶ 90; AS 43.82.010. The purpose of the Act was to encourage new investment in a pipeline project, not to limit the proposals that could be pursued. AS 43.82.010. The SGDA only provides for negotiation of a taxation and royalty scheme to govern the relationship of the State and the pipeline over the life of a project. It does not dictate which pipeline among competing proposals should ultimately be constructed. In fact, the SGDA explicitly contemplates that multiple projects can proceed under the Act and that multiple proposals can be given royalty and tax incentives.

2

> Nothing in this chapter prohibits different qualified sponsors or different qualified sponsor groups from submitting applications under AS 43.82.120 relating to similar or competing qualified projects or prohibits the commissioner of revenue or the commissioner of natural resources from reviewing and approving applications and proposed project plans under AS 43.82.140 relating to similar or competing qualified projects.

AS 43.82.160.  If multiple projects succeed in securing royalty and tax concessions from the State, the Act provides no mechanism for deciding between them.  Neither does it prohibit any effort to construct a pipeline outside this framework.  The reason for this is simple – the SGDA was enacted to *encourage* the construction of a pipeline; the development of multiple proposals directly fulfills this purpose.

The Amended Complaint explains that as a public entity, the Port Authority does not require the incentives envisions by the SGDA.  *Id.* ¶ 90.  Initially, the Port Authority began the process of applying for Stranded Gas Act concessions, but it was told by the State that such an application was not required.  *Id.*  Instead, the Port Authority and the State entered into a different agreement, the "Agreement Establishing Protocol for Alaska Pipeline Project Negotiations."  *Id.* ¶ 91.  In this agreement, the State acknowledged that the Authority did not need to proceed under the SGDA and could withdraw its application.  *Id.*  The agreement also stated that the Authority could resubmit the application, but only if it determined that the benefits available under the SGDA were necessary for successful implementation of its project.  *Id.*

Contrary to Defendants' implication – that through the SGDA process, the State determines which project will move forward – the Stranded Gas Act plays no role in determining a "winner" among competing pipeline proposals, and a pipeline proposal that did not seek tax and royalty concessions under the SGDA is a viable option.  Therefore, the Port Authority's effort to secure relief from the Defendants' group boycott and concerted refusal to deal is not

preempted by the Stranded Gas Act, as the allegations in the Amended Complaint and the language of the Act make clear.

    B.    <u>The SGDA does not preempt a claim for damages caused by Defendants' anticompetitve conduct</u>.

Defendants' exclusive focus on the purportedly negative consequence of injunctive relief ignores the Port Authority's entitlement to damages caused by their anticompetitive conduct. In asserting that the SGDA preempts this lawsuit, Defendants focus entirely on the injunctive relief sought by the Port Authority.

> Rather, what triggers SGDA preemption is the Port Authority's effort to interfere with the SGDA process through this litigation. The Port Authority seeks an injunction requiring the Defendants to sell it North Slope natural gas. Such an injunction inherently would interfere with the State's ability to negotiate stranded gas development agreements with the producers and other potential project sponsors and would undermine the economics of any project approved under the SGDA process.

ExxonMobil Opposition to Motion for Leave to Amend at 5 [Docket No. 101] ("XOM Opp.").[1] Defendants ignore the fact that any injunctive relief granted by the Court will be determined only after liability is established and will be shaped by the circumstances and the public interest as they exist at that time. Defendants also ignore the Port Authority's request for damages as a result of Defendants' collusion and concerted refusal to sell North Slope gas. Defendants do not, and cannot, claim that the SGDA somehow precludes an action for such damages.

**2.**    **The Amended Complaint demonstrates that the Port Authority has standing.**

    A.    <u>The Port Authority's action is consistent with well established principals of antitrust standing</u>.

The standing requirement is designed to ensure that only those parties genuinely harmed by anticompetitive conduct can petition the courts for relief. Its purpose is to prevent opening

---

[1] Defendant BP's Opposition to the Motion for Leave to Amend will similarly be designated as "BP. Opp."

REPLY IN SUPPORT OF MOTION FOR LEAVE TO FILE AMENDED COMPLAINT
*Alaska Gasline Port Authority v. ExxonMobil Corp., et al.*, No. 4:05-cv-00026-RRB

"the floodgates of litigation." *Calderone Enters. Corp. v. United Artists Theatre Circuit, Inc.*, 454 F.2d 1292, 1295 (2d Cir. 1971). The standing doctrine is designed to separate legitimate plaintiffs from "the great horde of opportunists who 'would've, could've, or might've'" entered a market, but who were not actually affected by anticompetitive behavior. *Amtrol, Inc. v. Vent-Rite Valve Corp.*, 646 F. Supp. 1168, 1177 (D. Mass. 1986). In this case, there is no danger that the "floodgates of litigation" will be opened, and there is no "great horde of opportunists" lurking at the courthouse door. As the Amended Complaint makes clear, a handful of entities attempted to secure North Slope natural gas for a pipeline project but were met with Defendants' joint refusal to deal: Alcan/Foothills, Yukon Pacific Corporation, MidAmerican Energy Holdings Corp., TransCanada, and the Port Authority. Amended Complaint ¶¶ 69-80. Thus, permitting the present suit to move forward is consistent with the purpose of the standing doctrine.

The Amended Complaint details the extensive steps the Port Authority has taken to advance its proposal for a natural gas pipeline – efforts that have been thwarted by Defendants' collusion and joint refusal to deal. If Defendants' overly narrow interpretation of the standing doctrine were accepted, it would create a rule that in any market featuring cartelization of an essential input, successful group boycott of any potential entrant confers antitrust immunity on those suppliers who conspire to restrict the supply. This is not the law, and cannot be the law.

      B.    <u>The allegations in the Amended Complaint demonstrate that the Port Authority is prepared to enter the market</u>.

The Amended Complaint contains a number of allegations that chronicle the Port Authority's extensive efforts to enter the markets for transportation and sale of North Slope natural gas. *See generally* Amended Complaint, Section IV.C. ¶¶ 81-114. These allegations provide greater detail regarding the Port Authority's partnership with the world's leading firms

in the areas of pipeline engineering, construction, and project finance. *Id.* ¶¶ 104-06, 113. They provide further information about the commitments reached with major natural gas shipping and receiving companies – commitments to be further deepened upon an agreement by the Defendants to provide gas. *Id.* ¶¶ 94-101. The Amended Complaint presents the various Environmental Impact Statements, rights of way, and permits for which the Port Authority has an exclusive option. *Id.* ¶ 102-03. Finally, the Amended Complaint provides greater detail about the sources of funding available to construct the project. *Id.* ¶¶ 107-113.

      C.    <u>Binding contracts and secured financing commitments are not required for standing</u>.

In opposing leave to amend, Defendants maintain that the Amended Complaint fails to establish preparedness because it does not allege the existence of "binding contracts" and "secured financing," including the exclusive commitment of Federal loan guarantees to the Port Authority's project. *See* BP Opp. at 8, 10; XOM Opp. at 10. As defendants would have it, liability for breach of contract must be the price of admission to the courthouse for an antitrust claim. There is no such requirement for antitrust standing, a fact demonstrated by the cases the Defendants themselves cite.

BP cites the Eleventh Circuit's opinion in *Gas Utilities Co. of Alabama v. Southern Natural Gas Co.*, 996 F.2d 282, 283 (11th Cir. 1993) for its reference to "secured financing," and *Jayco Systems, Inc. v. Savin Business Machines Corp.*, 777 F.2d 306, 315 (5th Cir. 1985) for the proposition that "mere possibility of financing being available" is insufficient to establish standing. BP Opp. at 8, 9. These opinions, both upholding summary judgment granted after extensive discovery, are inapposite. For example, in *Gas Utilities,* in granting summary judgment – the appropriate venue for deciding factual questions related to preparedness – the District Court found that the "potential competitor" in that case was in reality nothing more an

idea for a gas pipeline in the minds of two men. "Plaintiff's 'preparation' can best be styled as an idea coupled with a hope, plus some investigation to explore potential, and some indication of interest from potential customers." *Gas Utilities Co. of Alabama v. Southern Natural Gas Co.*, 825 F. Supp. 1551, 1572 (N.D. Ala. 1992).

In *Gas Utilities,* the absence of any funding commitments was only one of several factors demonstrating lack of preparedness, and, indeed, was merely reflective of the plaintiff's near complete lack of any preparation at all. The plaintiff in *Gas Utilities* had not formulated a definitive project; it had no offices, no credit, and no operational history; it had never hired any professionals to develop plans for a pipeline; it had not explored whether it would be subject to any regulatory authority; it had not secured any rights of way or permits; it had no capital other than $1,000 in startup funds; and it had never requested funds for a specific pipeline. *Id.* at 1557.

Similarly, in *Jayco*, the court upheld a grant of summary judgment – after a Fourth Amended Complaint and six years of litigation and discovery – on the basis that the plaintiff was not prepared to undergo a business expansion into a new market. The plaintiff's claims in litigation that it was prepared for entry were undercut by its statements at the time in question that it "had all the business it could handle" and that it was not financially able to engage in further business. *Jayco Systems*, 777 F.2d at 313. In assessing preparedness and determining whether the defendants' anticompetitive conduct prevented entry, the court found it telling that no antitrust claims were asserted in the first complaint. *Id.* at 315, 308. In the court's view, the case involved causes of action under contract and fraud that later morphed into antitrust claims, a fact that no doubt informed whether the plaintiff was an appropriate party to enforce the antitrust laws. *See id.* at 308, 321. In terms of failure to secure financing, the court also stressed the fact that at no time did anyone from the plaintiff ever approach anyone about financing. *Id.* at 315.

However, the court stated that even a complete failure to take the most basic steps to obtain financing, such as in that case, is not dispositive. Rather, this fact simply supported a finding of lack of preparedness on other grounds. *Id.* at 315-16.

Unlike the plaintiffs in *Gas Utilities* or *Jayco*, the Port Authority has demonstrated its preparedness in the Amended Complaint. It has a clear proposal for a pipeline, with firm engineering studies and cost estimates; it has contracted with the leading firms in pipeline construction and finance; it has shippers and receiving terminals available to receive gas processed through its pipeline; and it has multiple sources of financing available to it. The only thing it lacks is a supply of gas – a supply denied to it through Defendants' collusion.

**3.     The Amended Complaint states a claim for violation of Section 7.**

ExxonMobil argues that the Amended Complaint fails to allege a Section 7 claim, asserting that the Port Authority lacks standing, that the complaint fails to allege that the mergers and acquisitions alleged had a material effect on ExxonMobil's market share, and that the Port Authority fails to identify the relevant markets. Review of the Amended Complaint shows that each of these arguments is without merit.

To state a Section 7 claim, the plaintiff must allege a relevant market and a reasonable likelihood of lessening of competition within that market. *United States v. E.I. du Pont De Nemours and Co.*, 353 U.S. 586, 595 (1957). The Amended Complaint alleges that the greater concentration of Defendants' ownership of North Slope natural gas leases has affected the following markets: (1) the market for transport of natural gas from the North Slope; (2) the market for purchase of gas from the North Slope; (3) the market for sale of natural gas within the United States/North America; and (4) the market for sale of natural gas within Southcentral and Interior Alaska. Amended Complaint ¶¶ 175 ff.

The Amended Complaint alleges that the mergers and acquisitions detailed therein have increased concentration of ownership of natural gas leases, leading to a situation in which Defendants control over two-thirds of the proved natural gas resources on the North Slope, with the three largest producers controlling over 94%. *Id.* ¶¶ 25, 171-73. In such a highly concentrated market, Section 7 is designed to address even "minute" accretions of market power. *United States v. Aluminum Co. of America*, 377 U.S. 271, 280 (1964). The Amended Complaint alleges that Defendants' mergers and acquisitions increased their market power, prevented other producers from selling their own gas to the Port Authority, and increased Defendants' incentives and ability to withhold production of natural gas in concert. *Id.* ¶¶ 172-73.

**4.      The Port Authority did not engage in undue delay.**

The final argument offered by the Defendants is BP's assertion that the request to file an amended complaint should be denied because the Port Authority engaged in undue delay. Shortly after the Court granted the motions to dismiss, Defendants requested that the Court enter final judgment. They filed a "Notice" that they were filing a proposed final judgment – in effect, a motion requesting that final judgment be entered – and later, a corrected version of the same. Thirteen days after the initial "Notice," and only eight days after the corrected "Notice," the Court granted the request and entered judgment. This is less time than is provided by the Local Rules for an opposition or other response to a motion. Civil Local Rule Rule 7.1(e). BP provides no authority for the proposition that the circumstances here demonstrate undue delay. Because judgment was entered before the Port Authority could oppose BP's request, file an amended complaint, or otherwise respond, the Port Authority was foreclosed from filing an amended complaint on its own. The result is the present motion for leave to amend, together

with a motion to set aside the judgment. Based on these facts, BP cannot claim there has been any undue delay.

## CONCLUSION

For the reasons outlined above, the Port Authority respectfully requests that the Court set aside the judgment and permit it to file an amended complaint. The Amended Complaint adequately alleges claims against the Defendants, and the Port Authority requests that they be adjudicated on their merits.

Dated: August 28, 2006

Respectfully submitted,

 s/John F. Cove, Jr.

David Boies
Robert Silver
John F. Cove, Jr.
Kenneth F. Rossman IV
BOIES, SCHILLER & FLEXNER LLP
1999 Harrison St., Suite 900, Oakland, CA 94612
510.874.1000; 510.874.1460 (fax)
jcove@bsfllp.com

William M. Walker
WALKER & LEVESQUE, LLC

Charles E. Cole
LAW OFFICES OF CHARLES E. COLE

*Counsel for Plaintiff Alaska Gasline Port Authority*

# Certificate of Service

I hereby certify that on August 28, 2006, a copy of the foregoing document entitled**,**

**REPLY IN SUPPORT OF MOTION FOR LEAVE TO FILE AMENDED COMPLAINT**

was served electronically on each of the following:

David Boies, Kevin Barry, John F. Cove, Jr., Kenneth F. Rossman, IV, Robert Silver, William M. Walker, Charles E. Cole, Jeffrey M. Feldman, Paul B. Hewitt, Bradley S. McKim, Ronald C. Redcay, Matthew T. Heartney, Angel L. Tang, Donald B. Craven, William B. Rozell, Douglas J. Serdahely, C. Fairley Spillman, Matthew P. Whitley, G. Seth Beal, David J. Beck, Benjamin W. Hulse, James Langan, Eric J.R. Nichols, L. Nichol White, David J. Zott, and James P. Tuite.

By:  s/Kevin J. Barry.

BOIES, SCHILLER & FLEXNER LLP
1999 Harrison St., Suite 900, Oakland, CA 94612
510.874.1000; 510.874.1460 (fax)
kbarry@bsfllp.com